THE STATE EX REL. FRED HUELLER v. L. D. THOMPSON, State Auditor.

Court en Banc, December 30, 1926.

**1. SALARY: Assistant Commissioner: Power of Board: Increase.** The Board of the Permanent Seat of Government is expressly authorized to appoint as many watchmen as it deems necessary for the proper protection of the State's property, and as the statute makes no provision for their compensation the board has authority to fix their salaries.  The board has authority to appoint an assistant commissioner and to fix his compensation, and to increase his salary at its pleasure; and as such assistant commissioner is not a public officer within the meaning of the Constitution, his salary may be increased at any time.

2. ——: **Fixed by Appropriation Act: Title.**  The General Assembly has no power either to increase or decrease or otherwise to fix salaries by an appropriation act.  A section of an appropriation act whose manifest purpose is to regulate, determine and fix the salaries and compensation of all officers and employees affected by the appropriation is invalid.  It is invalid for the reason, if for no other, that such purpose is not and cannot be embraced in the title to a valid appropriation act.

3. ——: **Appropriation Act of 1925: Restriction of Increase.**  Section 100 of the Appropriation Act of 1925, Laws 1925, page 36, declaring that "no salary for any official or employee, either elective or appointive, provided for by this appropriation act, shall be in excess of the salary provided by statutory law for such official or employee, and in all cases where the salary of any such official or employee is not definitely fixed by statutory law, no salary paid by virtue of this appropriation act shall be in excess of the salary paid to the officer or employee holding such position the previous biennium," did not preclude the Board of the Permanent Seat of Goverment from increasing the salary of its assistant commissioner after said act was approved.  Said section is void, for it is an attempt .by means of an appropriation act to curtail the discretionary power of boards to regulate or increase the salaries of their employees.  But its invalidity. does not render void the appropriations made by the rest of the act.

4. **INVALID SECTION: Separable from Rest of Act.**  An invalid section of an appropriation act, which is separable from the rest of the act, does not render the rest invalid.

---

Corpus Juris-Cyc. References: **Mandamus,** 38 C. J., Section 631, p. 901, n. 1; Section 680, p. 919, n. 27. **Officers,** 29 Cyc., p. 1427, n. 66.  **States,** 36 Cyc., p. 863, n. 74.  **Statutes,** 36 Cyc., p. 976, n. 27; p. 982, n. 48; p. 1036, n. 59.

Mandamus.

PEREMPTORY WRIT AWARDED.

*F. T. Stockard* for relator.

(1)  Relator is an appointee of the Board of Permanent Seat of Government, and can be dismissed by it at pleasure.  The salary of the relator is not fixed by statute, the board fixes it.  (2)  The Constitution does not say in so many words that a general appropriation bill shall not contain anything other than what is permissively granted in said Section 28 of Article 4, but the fact that a general appropriation bill forms an exception to said Section 28, and, therefore, is not limited to a single subject, justifies the conclusion that the framers of that document intended that it should not embrace more than is specified therein.  (3)  General legislation cannot be made a part of an appropriation bill.  State ex rel. v. Tollerton, 236 Mo. 142; State ex rel. Carr, 13 L. R. A. 177; State ex rel. v. Marron, 128 Pac. 485; Commonwealth v. Gregg, 29 Atl. 297.

316 Mo.—18.

*North T. Gentry,* Attorney-General, for respondent.

(1) If Section 100, Laws 1925, p. 361, is to be given its intent and meaning, the salary of no official or employee can be increased over the salary of such official for the previous biennium.   (2)   The relator herein is an official, within the meaning of the law, and within the meaning of the Appropriation Act of 1925.   At page 33, Section 83 of said act, there was appropriated out of the State Treasury, $185,930, with which to pay an assistant commissioner, other officers and other expenses of the Board of the Permanent Seat of Government.   Out of this fund, therefore, the salary of the assistant commissioner must be paid.   Evidently, the General Assembly did not intend for that salary to be increased, and taking this section in connection with the other section referred to the Board of the Permanent Seat of Government was not authorized to make such increase. (3)   If the assistant commissioner is a state officer, then the salary of a state officer cannot be increased during the time of his term in office.

OTTO, J.—This is an original proceeding in mandamus, brought at the relation of Fred Hueller, Assistant Commissioner of the Permanent Seat of Government, against L. D. Thompson, State Auditor, to compel the Auditor to audit and draw his warrant upon the State Treasurer in favor of the relator for relator's salary at the rate of $150 per month instead of $135 per month.   Relator, after setting out the character and the personnel of the Board of the Permanent Seat of Government, alleges the following facts:

That on the 22nd day of February, 1925, the Board of the Permanent Seat of Government appointed relator Assistant Commissioner of the Permanent Seat of Government and fixed his compensation at $135 per month; that relator entered upon his services at the monthly compensation so fixed and continued to receive his pay at that figure until June 1, 1925.

It is alleged that on the 18th day of May, 1925, the Board of the Permanent Seat of Government, by its order at a meeting of the board, increased the compensation of relator from $135 per month to $150 per month, and ordered that from and after June 1, 1925, relator should be paid for his services as Assistant Commissioner of the Permanent Seat of Government the sum of $150 per month; that the respondent refused to audit and pay relator's compensation at the increased figure, and relator declined to accept any other, so that from June 1, 1925, to the present date relator has received no pay and the purpose of this proceeding is to compel the Auditor to audit and allow relator's monthly salary at the increased figure of $150 per month from June 1, 1925.

Respondent timely filed his return to our alternative writ, express-ly admitting all the facts alleged in relator's petition and in the writ, but respondent questioned his authority to recognize the legality of the act of the Board of the Permanent Seat of Government in in-creasing relator's salary, and for this reason only respondent declined to pay it. Upon the filing of respondent's return relator filed a de-murrer thereto, then replaced the demurrer with a motion for judg-ment on the pleadings, which motion was unquestionably the proper pleading. The issue thus made up, there remains for this court a question of law only. That question is whether the action of the Board of the Permanent Seat of Government in increasing relator's compensation from $135 to $150 per month was within the board's power at the time the order was made, in view of a certain appro-priation act hereafter referred to. If it was, the relator is entitled to a peremptory writ against respondent in this case, and if not, the alternative writ heretofore issued should be quashed and respondent discharged.

The question of law raised by respondent in his return is not in harmony with the question briefed by him, and we could decide this case without passing on what unquestionably was the real question of law which brought about this proceeding. The real question, as shown by the briefs on both sides, relates to the validity of certain provisions found in Section 100 of an Appropriation Act of 1925, Laws 1925, page 36 et seq., which section reads as follows:

"Sec. 100. *Salary—how determined.*—No salary for any official or employee, either elective or appointive, provided for by this ap-propriation act, shall be in excess of the salary provided by statutory law for such official or employee, and in all cases where the salary of any such official or employee is not definitely fixed by statutory law, no salary paid by virtue of this appropriation act shall be in excess of the salary paid to the officer or employee holding such position the previous biennium."

The Board of the Permanent Seat of Government has been created and certain powers conferred upon it by what is now Chapter 84, Revised Statutes 1919, and amendments thereto. The board consists of the Governor, the Secretary of State, State Auditor, State Treasur-er, and the Attorney-General. The board is authorized to appoint a Commissioner for the Permanent Seat of Government, who holds office at the pleasure of the board and whose salary is fixed by law at $2500 per annum (Laws 1923, p. 301). The board, acting through this commissioner, exercises supervision over and is charged with the duty of protecting and taking care of the State's property, in-cluding the Capitol Building at the seat of Government.

In addition to the appointment of a commissioner, the board is expressly authorized to appoint as many watchmen as it may deem

necessary for the proper protection of the State's property. As to the compensation of these watchmen, the statute makes no provision, thereby leaving it within the authority of the board to fix such compensation as the board may deem fair and reasonable.

While the foregoing covers the authority which has been specifically granted to the board as to the employment of assistants in the work of carrying out the duties and functions of the Board of the Permanent Seat of Government, there is no inhibition against the appointment or employment of such others as may be necessary to carry out its purposes, and, since said board is charged with a duty and responsibility of looking after and protecting such public property of great value, it was doubtless the intent of the Legislature to leave such appointees and employees and the amount of their compensation to the discretion of the board. This is manifested by the provisions of Section 83 of Appropriation Act of 1925, found at page 33 of the 1925 Session Laws, which appropriates $185,930 in a lump sum to meet the contingent expenses of the board, including the salaries of ''engineers, firemen, assistant commissioner, watchmen, janitors, matrons, helpers and assistants as may be deemed necessary by the board.''

Since the Legislature has not, by any general law, fixed the compensation of any employees or appointees of the Board of the Permanent Seat of Government, except that of the commissioner thereof, and has not named or limited the number of such employees or appointees, save and except certain temporary employees (Sec. 9267, R. S. 1919), it is to be presumed that it intended to give the board a discretion as to the kind and number of assistants and helpers necessary to carry on the duties enjoined upon the board by said Chapter 84, as well as the compensation of such employees, helpers and assistants. Indeed, the number of persons necessary to take care of and protect the property of the State as contemplated and required by law, is a matter which the Legislature could not foresee. Therefore, the placing of no inhibition upon the employment of such help, but to leave the same to the wisdom and discretion of the Board of the Permanent Seat of Government reflects a wholesome legislative policy. We hold, therefore, that the board, in its discretion, had the power to appoint an assistant commissioner and to fix his compensation. We further hold that such assistant commissioner is not a public officer within the meaning of Section 8 of Article XIV of the Constitution of Missouri, which forbids the compensation of any state, county or municipal officer to be increased during his term of office. [State ex rel. v. Johnson, 123 Mo. 43.] This being true, the Board of the Permanent Seat of Government had the right to increase the salary of relator unless it was precluded from so doing

by certain provisions of Section 100 of the above-mentioned appropriation act.

What, then, is the effect of Section 100 of said appropriation act where it provides that in all cases where the salary of an officer or employee has not been "definitely fixed by statutory law" the amount paid to such official under the appropriation act cannot exceed the amount of salary paid to the person holding the same position the previous biennium? If the Legislature could go thus far in an appropriation bill, it could go further and fix the salaries of all such officers at a given, definite amount.

Said Section 100 strikes at two classes of officials. That part which undertakes to regulate the payment of such salaries as are definitely fixed by statutory law was perfectly useless because no more could be paid in any event than the statute had fixed. The last part of said Section 100 reads as follows: "and in all cases where the salary of such official or employee is not definitely fixed by statutory law, no salary paid by virtue of this appropriation act shall be in excess of the salary paid to the officer or employee holding such position the previous biennium." It is manifest that the real purpose of this provision was an undertaking to regulate, determine and fix the salaries of all such officers or employees affected by the appropriation act whose compensation might not be fixed at all by statutory law, or, if at all, where the statute fixed a maximum only. This provision has no other character than that of general legislation and to inject general legislation of any sort into an appropriation act is repugnant to the Constitution. [Art. IV, sec. 28, Mo. Constitution.] And the appropriation bill as provided by the Constitution (Art. IV. sec. 28) may have a plurality of subjects, while a bill for general legislation may have but one.

An appropriation bill is just what the terminology imports and no more. Its sole purpose is to set aside moneys for specified purposes, and the lawmaker is not directed to expect or look for anything else in an appropriation bill except appropriations. As to these he is charged by the Constitution to look and watch for two things: (a) the various subjects of the bill, and (b) the account or accounts for which the payment of the State's moneys are being set apart. The same section and article of the Constitution forbids any bill, except as in the Constitution provided, to contain more than a single subject and this must be clearly expressed in the title. The exceptions are two, one of which is appropriation bills, and the other is such legislation as is provided for and limited by the third division of Section 44 of Article IV of the Constitution. [Art. IV, secs. 28 and 44.] Here we have an appropriation act which not only appropriates money for the various subjects embraced therein, but which attempts to fix and regulate all salaries affected by the act which

either have not been fixed by any statute or not definitely fixed, which would include all salaries where the maximum alone was named. That the Legislature has the right by general statute to fix salaries, is beyond question, but has it the right to do so by·means of an appropriation act? We think not.

As has been observed in well-reasoned cases, if the practice of incorporating legislation of general character in an appropriation bill should be allowed, then all sorts of ill-conceived, questionable, if not vicious, legislation could be proposed, with the threat, too, that if not assented to and passed, the appropriations would be defeated. The possibilities of such legislation and this court's condemnation thereof are well illustrated in the case of State ex rel. Tolerton v. Gordon, 236 Mo. 142, as well as the following cases from other States: State ex rel. v. Carr, 13 L. R. A. 177; Com. v. Greg, 29 Atl. 297.

Our Constitution, Section 28, Article IV, is the one certain safeguard against such distracting possibilities and should be strictly followed. We hold, therefore, that Section 100 of the Appropriation Act, under our Constitution, is unconstitutional and' void, and it follows that our peremptory writ of mandamus should be granted.

The question remains, does the invalidity of said Section 100 render the entire Appropriation Act void? We hold that it does not. It is well settled that a legislative act may be void in part, leaving the remainder a good and valid statute where the part that is valid may be separated from the part that is void. [State ex rel. v. Gordon, 236 Mo. 1. c. 170; State ex rel. v. Taylor, 224 Mo. 474.]

Our alternative writ is, therefore, made permanent. It is so ordered. All concur, except *Graves* and *Ragland, JJ.,* absent.