[Civil No. 3396. Filed August 3, 1933.]

[24 Pac. (2d) 666.]

GEORGE P. SELLERS, Petitioner, v. ANA FROH-MILLER, as State Auditor of the State of Arizona, Respondent.

Messrs. Windes & Miller, for Petitioner.

Mr. Charles L. Strouss and Mr. J. R. McDougall, Assistant Attorney General, for Respondent.

McALISTER, J.—On July 16, 1933, the petitioner, George P. Sellers, filed with the state auditor, Ana Frohmiller, a claim for $9.67 for salary as a secretary in the office of Governor B. B. Mouer for the fifteenth day of July, 1933. Being doubtful of the legality of the claim the auditor rejected it, whereupon the petitioner filed in this court a petition for an alternative writ of *mandamus* directing the auditor to approve the claim and draw a warrant in payment of it, or show cause why she has not done so.

The petitioner bases his claim to the writ upon the provisions of chapter 95, Session Laws of 1933, which is the general appropriation bill enacted at the regular session of the eleventh legislature for the biennium beginning July 1, 1933, and ending June 30, 1935. Section 1 of this chapter appropriates the sums set forth in the sixty-one subdivisions compris-

ing the section, each of which designates the amount set aside and appropriated to the particular department, institution or agency of the state named in that subdivision. Sections 2, 3, 4 and 5 deal with matters which do not concern this inquiry, but section 6 provides for the appointment of a person to perform the services for which the claim of petitioner is made. It reads as follows:

"Section 6. Provided that each and every sum hereby and herein appropriated for the purpose of Operation and/or Travel, excepting the respective sums appropriated for Operation and/or Travel to the University of Arizona, Arizona State School for the Deaf and Blind, Arizona State Teachers' College at Flagstaff, and Arizona State Teachers' College at Tempe, and Attorney General, shall be under the direct control and supervision of the Governor. No person, officer, agent, agency, commission, institution or department of state, except those institutions herein excepted, shall expend or contract any obligation of any character whatsoever against any sum herein appropriated for Operation and/or Travel until a proper requisition therefor has been made to the Governor, in such form as he may require and the Governor has been shown to his full satisfaction that a necessity exists for such expenditure or the contracting of such obligation, at which time, if he deems such expenditure or obligation necessary, he shall grant such requisition, and the auditor shall draw his warrant for such amount only after being properly presented with a claim therefor, duly approved by the Governor.

"Subdivision 1. For the salary of a secretary to the Governor to assist in the disbursement of appropriations for Operation and/or Travel, as in this section provided, the sum of Three Thousand Six Hundred ($3,600.00) Dollars per year for each of the twenty-second and twenty-third fiscal years, is hereby appropriated. For the purpose of providing the necessary supplies for. the disbursement of appropriations for Operation and/or Travel during the twenty-second and twenty-third fiscal years, the sum

of Two Hundred and Fifty ($250.00) Dollars per annum is hereby appropriated."

To all of the departments, institutions and agencies of the state the general appropriation bill appropriates certain sums for operation and to many of them for travel, and this section, it will be observed, places the control of the expenditure of such appropriations, except in certain instances, under the supervision of the Governor.

The petition alleges that on July 14, 1933, the Governor, pursuant to the authority conferred upon him by this section, appointed "the petitioner as a secretary, to perform such clerical duties as he, the said Governor, might direct, to enable him, the said Governor, to perform and discharge the duties imposed upon him by the provisions of said Section 6," and that on the following day the petitioner entered upon the discharge of his duties and, in accordance with the statute requiring the payment of those employed by the state twice a month, filed with the auditor a claim for $9.67, which, at the annual salary provided therein, $3,600, was the amount due him for first half of July, namely, one day, the 15th, but notwithstanding the foregoing provision the auditor rejected his claim.

In answering the petition the respondent interposed a general demurrer and alleged further that chapter 95, Laws of 1933, is the general appropriation bill and that section 6 thereof is unconstitutional in that it violates sections 13 and 20, article 4, part 2, of the Constitution of this state, which read as follows:

"Section 13. Every Act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be embraced in the title."

"Section 20. The general appropriation bill shall embrace nothing but appropriations for the different departments of the State, for State institutions, for public schools, and for interest on the public debt. All other appropriations shall be made by separate bills, each embracing but one subject."

The contention of the respondent is that section 6 contravenes both of these provisions. It violates, she says, the first section because its subject matter is not expressed in the title of chapter 95 and the second one because it is a part of the general appropriation bill and contains legislation other than that making appropriations for the support of the various departments of the state government. If this contention, whether based on the first or second section, is sound, her action in rejecting the claim is proper, otherwise not. The correctness of this position can only be determined by ascertaining what section 6 actually provides for and accomplishes and then giving it this meaning. It will be observed that after section 1 makes and sets aside, in its sixty-one subdivisions, appropriations for the various departments of the state, section 6 provides that the expenditure of that portion of each of the appropriations set apart for operation and travel shall be under the direct control and supervision of the Governor and that "no person, officer, agent, agency, commission, institution or department of state, except those institutions herein excepted, shall expend or contract any obligation of any character whatsoever against any sum herein appropriated for Operation and/or Travel until a proper requisition therefor has been made to the Governor," and it has been shown to his full satisfaction in such manner as he may require that the necessity therefor exists, in which event it becomes his duty to grant the requisition. Thereupon, the auditor shall "draw his warrant for such amount only after being properly presented with a claim therefor, duly approved by the Governor." This

section, in its first and only subdivision, provides for a secretary to be appointed by the Governor solely for the purpose of assisting him in performing the new duties assigned him, that is, in disbursing the appropriations for operation and travel, and appropriates $3,600 per year as his compensation for this service.

Before this section was enacted the Governor had no duty whatever to perform relative to the matter of approving claims against the state for operation, travel or anything else, unless the auditor rejected a claim, in which instance it became his duty to pass upon it. Article 5, Constitution of Arizona; sec. 19, Rev. Code 1928; *Winsor* v. *Hunt,* 29 Ariz. 504, 243 Pac. 407. The requirement of section 29, Revised Code of 1928, that he countersign all warrants issued by the state auditor, is purely ministerial, and, hence, enforceable by *mandamus* if the warrants are in proper form and duly signed by the auditor. *Winsor* v. *Hunt, supra.* The duty to examine and approve claims has heretofore rested solely in the state auditor. Sections 28 and 2619, Rev. Code 1928. Moreover, it was never, prior to the passage of section 6, *supra,* required of any person, officer or agency to whom an appropriation was made that he first procure a requisition from the Governor or from anyone else before spending or contracting the funds set apart for the use of that person, officer or agency, for operation, travel or any other purpose. Up to then, the statutes on this subject had been enacted upon the theory that the state was sufficiently protected by requiring the auditor alone to audit and approve the expenditures for operation and travel as well as for other purposes, but by the adoption of this section it is plain that the purpose of the legislature was to change the policy of the state in this respect. And this being true, it becomes the duty of this court to give effect to the expressed will of that

body if we can do so without permitting a violation in any particular of the fundamental law to which every act of legislation must conform.

The passage of section 6 was undoubtedly prompted by a legislative desire to take from the auditor the control and supervision of the expenditure of the appropriations for operation and travel and place it under the Governor, and, in addition, to require every officer, before using any part of the sum appropriated to his department for these purposes, to show to the full satisfaction of the Governor the necessity for its use and procure from him a requisition therefor. The accomplishment of this end, it is clear, is a rightful and proper subject of legislation, but in view of section 20, *supra,* providing that the general appropriation bill shall embrace nothing but appropriations for the different departments of the state, it is equally clear that it cannot be done as a part of that bill. The very purpose of this provision of the Constitution is to confine the general appropriation bill to appropriations for the different departments of the state government and exclude from it all legislation except, perhaps, that which is clearly incidental to or explanatory of a particular appropriation. Here, the appropriation is merely incidental to the legislation it was intended to help carry out, for it is perfectly plain that the enactment of section 6 was prompted by a desire on the part of the members of the legislature to take from the auditor the control and supervision of the expenditures of certain appropriations and place them under the Governor, and, in addition, to make the new requirements that a requisition from the Governor be secured before any portion of the appropriations to any department could be expended or contracted, and that the claim itself be approved by the Governor before the auditor issues a warrant paying it. To say that this legislation is merely incidental to the appropriation of the

$3,600 per year would be equivalent to saying that the chief purpose in the enactment of section 6 was to appropriate this sum of money for the salary of an additional secretary rather than to pass an act that the legislators thought would be beneficial to the state. We would not, unless compelled to do so, attribute to the membership of that body such a motive in the passage of any piece of legislation, yet it would be necessary to do so to uphold the contention of the petitioner.

If section 6 had been enacted in a separate bill as a particular piece of legislation there would be no question but that the provisions of its first and principal paragraph would be treated and considered as the main and fundamental legislation of the act and the appropriation provided for in the subdivision to help carry it into effect as merely incidental thereto, and there is no reason of which we are aware why it should be any differently regarded merely because it is a part of another bill, and especially is this true when, as here, it is distinct and separable from that in connection with which it appears.

The general appropriation bill is not in the true sense of the term legislation; it is, as the language implies, merely a setting apart of the funds necessary for the use and maintenance of the various departments of the state government already in existence and functioning. *State* v. *Thompson,* 316 Mo. 272, 289 S. W. 338. In providing that it should embrace nothing else, the framers of the Constitution undoubtedly intended that members of the legislature should be free to vote on it knowing that appropriations and nothing else were involved. *State* v. *Thompson, supra.* The reason for such a requirement is aptly expressed by the court in this case in the following language:

"As has been observed in well-reasoned cases, if the practice of incorporating legislation of general

character in an appropriation bill should be allowed, then all sorts of ill conceived, questionable, if not vicious, legislation could be proposed with the threat, too, that, if not assented to and passed, the appropriations would be defeated. The possibilities of such legislation and this court's condemnation thereof are well illustrated in the case of *State ex rel. Tolerton* v. *Gordon,* 236 Mo. 142, 139 S. W. 403, as well as the following cases from other states: *State ex rel.* v. *Carr,* 129 Ind. 44, 28 N. E. 88, 13 L. R. A. 177, 28 Am. St. Rep. 163; *Com.* v. *Gregg,* 161 Pa. 582, 29 Atl. 297.''

In 59 Corpus Juris, page 253, paragraph 392, appears this language:

''By the constitutions of some states, the legislature is authorized to include in a general appropriation bill appropriations for certain designated objects and classes of expenses only, and is required to make all other appropriations by separate bills, each embracing but one subject, or containing but one item of appropriation for a single and certain purpose therein expressed. Such provisions are mandatory, and the inclusion of matters within the general appropriation bill which are not embraced within the constitutionally specified subjects or properly connected therewith is void by operation of the constitution.''

As indicating the general trend of the decisions on this proposition the following may be read with interest: *State ex rel. Hibbard* v. *Cornell,* 60 Neb. 276, 83 N. W. 72; *State* v. *Eggers,* 36 Nev. 372, 136 Pac. 100; *Westinghouse Electric & Mfg. Co.* v. *Chambers,* 169 Cal. 131, 145 Pac. 1025; *State* v. *Sargent,* 18 N. M. 131, 134 Pac. 218; *Bryan* v. *Menefee,* 21 Okl. 1, 95 Pac. 471; *People* v. *O'Ryan,* 71 Colo. 69, 204 Pac. 86; *Hailey* v. *Huston,* 25 Idaho 165, 136 Pac. 212; *Farrell* v. *Oliver,* 146 Ark. 599, 226 S. W. 529.

Since, therefore, the main provisions of section 6 must fall because they constitute legislation in the general appropriation bill, it follows necessarily that

the appropriation therein for the salary of a secretary whose sole duty is to assist the Governor in performing the duties such legislation prescribes must fall with it. If the duties the performance of which the appropriation was enacted to pay for never had any life, it is clear that that which was merely incidental to them was likewise stillborn.

In view of the foregoing, a discussion of the contention that section 6 contravenes also section 13, article 4, part 2, of the Constitution, in that its subject is not expressed in the title of chapter 95, Laws of 1933, becomes unnecessary. Whether or not the title to this chapter contains language correctly foreshadowing the provisions of section 6 is wholly immaterial since the inclusion of such legislation in the general appropriation bill is forbidden. If an act which makes appropriations to the various departments of the state contains, in addition to appropriations, legislation of such a nature that its subject must be expressed in the title, this alone would immediately suggest that such legislation could not stand.

Respondent alleges in her answer and contends strongly in her brief that the position of "secretary to the Governor to assist in the disbursement of appropriations for Operation and Travel" is an office, and that the petitioner under the provisions of section 5, article 4, part 2, Constitution of Arizona, is ineligible to hold it because he was a member of the legislature that created it. This section reads as follows:

"No member of the Legislature, during the term for which he shall have been elected, shall be appointed or elected to any civil office of profit under this State, which shall have been created, or the emoluments of which shall have been increased, during said term."

This contention is, perhaps, not without merit, but inasmuch as it is clear that section 6 violates section

20, article 4, part 2, of the Constitution, it is unnecessary to consider it.

Hence, the alternative writ of *mandamus* is quashed and the petition that it be made peremptory denied.

ROSS, C. J., and LOCKWOOD, J., concur.