[Civil No. 4143. Filed December 4, 1939.]

[96 Pac. (2d) 401.]

GEORGE T. CALDWELL, MARY E. CALDWELL, H. V. SMITH and MARGARET C. SMITH, Appellants, v. BOARD OF REGENTS OF THE UNIVERSITY OF ARIZONA, Appellee.

Messrs. Houston & Dodd, for Appellants.

Mr. Joe Conway, Attorney General, and Mr. Edward P. Cline, Assistant Attorney General, for Appellee.

LOCKWOOD, J.—This is an action by George T. Caldwell and Mary E. Caldwell, his wife, H. V. Smith and Margaret C. Smith, his wife, hereinafter called plaintiffs, against the Board of Regents of the University of Arizona, hereinafter called defendant, asking for a declaratory judgment that a certain clause in section 2, chapter 88, of the regular session laws of 1939, being the general appropriation bill, is null and void, and that the defendant be enjoined from discharging any of the above plaintiffs from their services as employees of the University of Arizona by reason of the aforesaid clause of chapter 88, *supra*.

A general demurrer was filed to the complaint, which was sustained, and plaintiffs declining to amend, judgment was rendered in favor of defendant, whereupon this appeal was taken.

The complaint alleges the marital relationship of plaintiffs and that all of them had for many years previously been continuously employed by defendant at the University of Arizona; that the fourteenth legislature of the state of Arizona, at its regular session in 1939, adopted chapter 88, which was the general appropriation bill, for the ensuing biennium, and that section 2 of said act contained the following proviso: "In no case, shall both the husband and wife be included, at the same time, on the pay rolls mentioned

in this act." That on or about the 15th day of April, 1939, the defendant informed plaintiffs that as soon as such law should become effective, which by its terms was the 1st day of July, 1939, and solely by reason thereof and because it feared to incur the penalties provided by law if it violated the terms of said proviso of chapter 88, *supra,* it would no longer employ both husband and wife in any case, and requested the plaintiffs to determine among themselves which spouse should lose employment. It was further alleged that plaintiffs were informed and believed that but for the passage of said chapter 88, *supra,* and the fear defendant had that a penalty would be visited upon it in case of any violation thereof, it would gladly continue them in their existing employment, and that the only reason which actuated it in its request that the plaintiffs choose which of each couple should retire from employment by defendant was said proviso of chapter 88, *supra.* The complaint then alleged that the proviso was unconstitutional and void for many reasons, and particularly because it violated article IV, section 20, of the Constitution of Arizona, which reads, in part, as follows:

"The general appropriation bill shall embrace nothing but appropriations for the different departments of the State, for State institutions, for public schools, and for interest on the public debt. . . . "

The sole issue before us for our consideration is whether that portion of section 2 above quoted is unconstitutional, as being a violation of section 20, article IV, *supra.* We have had the question of the effect of this section of the Constitution directly under consideration in at least two cases. The first is *Sellers* v. *Frohmiller,* 42 Ariz. 239, 24 Pac. (2d) 666, 668. Section 1 of the general appropriation bill of 1933, chapter 95, appropriated certain sums for the support of

specified departments and agencies of the state, each one having a separate subdivision of the section devoted to its appropriation. Sections 2, 3, 4 and 5 of the bill dealt with matters not material to the case, while section 6 read as follows:

"Provided that each and every sum hereby and herein appropriated for the purpose of Operation and/or Travel, excepting the respective sums appropriated for Operation and/or Travel to the University of Arizona, Arizona State School for the Deaf and Blind, Arizona State Teachers' College at Flagstaff, and Arizona State Teachers' College at Tempe, and Attorney General shall be under the direct control and supervision of the Governor. No person, officer, agent, agency, commission, institution or department of state, except those institutions herein excepted, shall expend or contract any obligation of any character whatsoever against any sum herein appropriated for Operation and/or Travel until a proper requisition therefor has been made to the Governor, in such form as he may require and the Governor has been shown to his full satisfaction that a necessity exists for such expenditure or the contracting of such obligation, at which time, if he deems such expenditure or obligation necessary, he shall grant such requisition, and the auditor shall draw his warrant for such amount only after being properly presented with a claim therefor, duly approved by the Governor.

"Subdivision 1. For the salary of a secretary to the Governor to assist in the disbursement of appropriations for Operation and/or Travel, as in this section provided, the sum of Three Thousand Six Hundred ($3,600.00) Dollars per year for each of the twenty-second and twenty-third fiscal years, is hereby appropriated. For the purpose of providing the necessary supplies for the disbursement of appropriations for Operation and/or Travel during the twenty-second and twenty-third fiscal years, the sum of Two Hundred and Fifty ($250.00) Dollars per annum is hereby appropriated."

Sellers had been appointed by the Governor as secretary under subdivision 1, and filed his claim for salary under such subdivision. The auditor, being doubtful of the legality of the claim, rejected it and the matter came before us for decision. We said:

"The passage of section 6 was undoubtedly prompted by a legislative desire to take from the auditor the control and supervision of the expenditure of the appropriations for operation and travel and place it under the Governor, and, in addition, to require every officer, before using any part of the sum appropriated to his department for these purposes, to show to the full satisfaction of the Governor the necessity for its use and procure from him a requisition therefor. The accomplishment of this end, it is clear, is a rightful and proper subject of legislation, but in view of section 20, *supra,* providing that the general appropriation bill shall embrace nothing but appropriations for the different departments of the state, it is equally clear that it cannot be done as a part of that bill. The very purpose of this provision of the Constitution is to confine the general appropriation bill to appropriations for the different departments of the state government and exclude from it all legislation except, perhaps, that which is clearly incidental to or explanatory of a particular appropriation. . . .

"The general appropriation bill is not in the true sense of the term legislation; it is, as the language implies, merely a setting apart of the funds necessary for the use and maintenance of the various departments of the state government already in existence and functioning. *State ex rel. Hueller* v. *Thompson,* 316 Mo. 272, 289 S. W. 338, 341. In providing that it should embrace nothing else, the framers of the Constitution undoubtedly intended that members of the legislature should be free to vote on it knowing that appropriations and nothing else were involved. *State ex rel. Hueller* v. *Thompson, supra.* The reason for such a requirement is aptly expressed by the court in this case in the following language:

" 'As has been observed in well-reasoned cases, if the practice of incorporating legislation of general

character in an appropriation bill should be allowed, then all sorts of ill conceived, questionable, if not vicious, legislation could be proposed with the threat, too, that, if not assented to and passed, the appropriations would be defeated. The possibilities of such legislation and this court's condemnation thereof are well illustrated in the case of *State ex rel. Tolerton* v. *Gordon,* 236 Mo. 142, 139 S. W. 403, as well as the following cases from other states: *State ex rel. Worrell* v. *Carr,* 129 Ind. 44, 28 N. E. 88, 28 Am. St. Rep. 163, 13 L. R. A. 177; *Com.* v. *Gregg,* 161 Pa. 582, 29 Atl. 297.' ''

and we held section 6, *supra,* to be unconstitutional.

In the case of *State* v. *Angle, ante,* p. 13, 91 Pac. (2d) 705, 708, the question again arose as to how far the biennial appropriation bill could contain in its appropriation legislation other than the mere appropriation of money for the purposes set forth thereunder, and we said:

'' . . . After a careful review of the cases, we think the rule laid down thereby may be stated as follows. The general appropriation bill can contain nothing but the appropriation of money for specific purposes, and such other matters as are merely incidental and necessary to seeing that the money is properly expended for that purpose only. Any attempt at any other legislation in the bill is void. . . . ''

We see no reason to depart from the general rule laid down by us in these two cases and reaffirm it. The question is whether it is applicable to the proviso in question.

It is contended by plaintiffs that the proviso is general legislation. It is urged by defendant that it is ''merely incidental and necessary to seeing that the money is properly expended for that purpose only.''

There are two principles of statutory and constitutional interpretation which we think are peculiarly applicable to cases of this kind. The first is

that the legislature may not do indirectly what it is prohibited from doing directly. *Macallen Co.* v. *Massachusetts,* 279 U. S. 620, 49 Sup. Ct. 432, 73 L. Ed. 874, 65 A. L. R. 866; *Rainey* v. *Michel,* 6 Cal. (2d) 259, 57 Pac. (2d) 932, 105 A. L. R. 148; *Moore* v. *Humboldt County,* 46 Nev. 220, 204 Pac. 880, 210 Pac. 401. The second is that in construing a statute which is alleged to be unconstitutional, it should be scrutinized very carefully, and no matter what its form, if its true purpose and probable effect is to violate a constitutional provision, it will be held void. *Giragi* v. *Moore,* 49 Ariz. 74, 64 Pac. (2d) 819, 110 A. L. R. 320; *Grosjean* v. *American Press Co.,* 297 U. S. 233, 56 Sup. Ct. 444, 449, 80 L. Ed. 660. With these rules of interpretation to guide us, let us examine the proviso.

We think there can be no question that, as was said in the Grosjean case, *supra,* "in the light of its history and of its present setting" it is not a mere incidental and necessary regulation of the expenditure of the moneys appropriated by the many subdivisions of chapter 88, *supra,* but an attempt to establish certain general qualifications for all state employees whose salaries are paid by authority of the general appropriation bill.

In the absence of constitutional or statutory disqualification all persons are eligible to public employment whom the appointing officers select, regardless of age, sex, status or other qualifications. *People ex rel.* v. *McCormick,* 261 Ill. 413, 103 N. E. 1053, Ann. Cas. 1915A 338. It is a well-known fact that many years a number of employees of the state, in its various activities, have been husband and wife. In the absence of the proviso under consideration there is no doubt that marital status is not the slightest legal impediment to the employment of any person by the state. If the proviso is valid it automatically dis-

qualifies one-half of our married citizens from such employment. The question of whether legislation having this purpose and effect is morally just, economically sound, or politically expedient, is not one for the courts to consider. Whether the legislature may constitutionally enact such legislation in any manner is not necessary for us to determine in the present case. But to hold that legislation having this purpose and far reaching effect is "merely incidental and necessary to seeing that the money is properly expended for that purpose only" is to substitute the shadow for the substance, and to disregard the purpose and effect of the proviso entirely.

Counsel for defendant have cited us to cases from two jurisdictions which they contend uphold their position that the legislation we are discussing is merely incidental, and not general in its nature. In the case of *Reilly* v. *Knapp,* 105 Kan. 565, 185 Pac. 47, 48, the court, in its opinion did say:

" . . . The Legislature might have provided, as a proper part of an appropriation bill, that no money appropriated by the act should be used to pay the salary or compensation of any officer or employé related by blood or marriage to certain other officers, and this might have been done without making it a separate and distinct subject from that of appropriations; . . . "

but this was *dicta* only and utterly ignores the rules that it is the purpose and effect of the law, and not its form, which determine its constitutionality, and that the legislature may not do indirectly what it is prohibited from doing directly. Further, the case cited expressly held that since within the general appropriation bill there was included a proviso specifically attempting to establish qualifications for certain offices, such proviso was void as violating the constitutional provision.

Much reliance is placed on the case of *State ex rel. Lucero v. Marron,* 17 N. M. 304, 128 Pac. 485. In the general appropriation bill was an appropriation for a certain purpose, and several provisos regulating the methods of raising the money appropriated and its expenditure. The Supreme Court of New Mexico, in substance, laid down the same general rule which we have, that in addition to the actual appropriation of money, there might be included with the appropriation matter germane thereto and directly connected with it which was reasonably necessary to carry out the provisions of the appropriation bill, and held the matters in issue came within the rule. Upon an examination of the case we cannot see where the provisions found to be constitutional in the New Mexico case are in any manner of the same class as the one under consideration in the present action.

In the later case of *State ex rel. Whittier v. Safford,* 28 N. M. 531, 214 Pac. 759, 760, considering the same subject, the court said:

" . . . The details of expending the money so appropriated, which are necessarily connected with and related to the matter of providing the expenses of the government, are so related, connected with, and incidental to the subject of appropriations that they do not violate the Constitution if incorporated in such general appropriation bill. It is only such matters as are foreign, not related to, nor connected with such subject, that are forbidden. Matters which are germane to and naturally and logically connected with the expenditure of the moneys provided in the bill, being in the nature of detail, may be incorporated therein. . . . "

With this statement of the law we agree, but we think a provision altering so materially the qualification for all state employees as that involved in the present case can hardly be said to be "matters which

are germane to and naturally and logically connected with the expenditure of the moneys provided in the bill, being in the nature of detail''.

Since the proviso in question is unquestionably in substance an attempt to enact far reaching general legislation establishing a new qualification for all state employees whose salaries are paid under the general appropriation bill, and since such general legislation in that bill is expressly forbidden by article IV, section 20, *supra,* we hold that the proviso is unconstitutional and void, and that the defendant will not violate any law by employing all of plaintiffs, if the only objection to their employment is that any two of them are husband and wife.

The judgment of the superior court is reversed and the case remanded with instructions to, enter judgment in accordance with the principles laid down herein.

ROSS, C. J., and McALISTER, J., concur.