

# SUPREME COURT OF MISSOURI
## en banc

PLANNED PARENTHOOD OF THE )     *Opinion issued February 14, 2024*
ST. LOUIS REGION, ET AL., )
    )
    Respondents, )
    )
v. )     No. SC99966
    )
ROBERT KNODELL, IN HIS OFFICAL )
CAPACITY AS ACTING DIRECTOR OF )
THE MISSOURI DEPARTMENT OF )
SOCIAL SERVICES, ET AL., )
    )
    Appellants. )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Jon E. Beetem, Judge

Planned Parenthood of the St. Louis Region and Southwest Missouri, Planned Parenthood Great Plains, and Comprehensive Health of Planned Parenthood Great Plains (collectively, "Planned Parenthood") sought declaratory judgment in the circuit court declaring House Bill No. 3014 ("HB 3014") unconstitutional and requested injunctive relief preventing its implementation and enforcement. HB 3014 was an appropriation bill the Missouri General Assembly enacted to supplement funding in fiscal 2022 for the MO HealthNet program, which reimburses Medicaid providers for health care-related services. HB 3014 professed to eliminate Medicaid funding for abortion providers and their

affiliates, which would include Planned Parenthood. Planned Parenthood alleged HB 3014 violated the single subject requirement in article III, section 23 and the equal protection clause in article I, section 2 of the Missouri Constitution. Planned Parenthood named the Missouri Department of Social Services ("DSS"), the MO HealthNet Division, the Missouri Medicaid Audit and Compliance Unit, and these entities' respective directors (collectively, the "State") as defendants in its legal action due to these entities' role in implementing and administering HB 3014 and MO HealthNet. Following a trial, the circuit court entered judgment for Planned Parenthood on both of Planned Parenthood's constitutional claims, and the State appealed. Because the State does not appeal the circuit court's entry of judgment for Planned Parenthood on its equal protection claim, this Court affirms the circuit court's judgment.

## Legal and Factual Background

The MO HealthNet Division of DSS administers Missouri's Medicaid program, known as MO HealthNet. Health care providers must become authorized MO HealthNet providers to seek reimbursement for providing health-related services to Medicaid-eligible individuals. To do so, providers must sign a MO HealthNet provider participation agreement pursuant to section 208.153.2.[1] Once authorized, providers bill DSS for eligible services provided to Medicaid-eligible individuals, and DSS reimburses providers.[2]

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2016.
[2] Section 208.151 sets forth the individuals who are eligible to receive Medicaid services. Section 208.152 sets forth the health-related services eligible for reimbursement. Section 208.152.1(12) excludes elective abortions from MO HealthNet coverage; however, chapter 208 does not preclude abortion providers or their affiliates from being eligible for

2

Eligible participants in the program may obtain MO HealthNet benefits from "any provider of services with which an agreement is in effect under this section and which undertakes to provide the services, as authorized by the MO HealthNet division." Section 208.153.1.

Planned Parenthood provides health care services, including physicians' services and family planning services. Physicians' services and family planning services provided to Medicaid-eligible individuals by authorized providers are subject to reimbursement by MO HealthNet. Section 208.152.1(6), (12).[3] Planned Parenthood was enrolled as a MO HealthNet provider and had a MO HealthNet provider participation agreement with DSS during fiscal 2022. The agreement states, in relevant part:

> If at any time state or federally appropriated funds available to the [Department of Social Services]/[Medicaid Audit and Compliance Unit]/[MO HealthNet Division] for payment to [me]/[the provider] for covered services under this agreement are insufficient to pay the full amount

---

reimbursement when providing other services that are covered under the statute. References to section 208.152 are to RSMo Supp. 2021.

[3] Section 208.152.1 states, in relevant part:

> MO HealthNet payments **shall** be made on behalf of those eligible needy persons . . . who are unable to provide for it in whole or in part . . . for the following: . . . (6) **Physicians' services**, whether furnished in the office, home, hospital, nursing home, or elsewhere; . . . (12) **Family planning** as defined by federal rules and regulations; provided, however, that such family planning services shall not include abortions or any abortifacient drug or device that is used for the purpose of inducing an abortion unless such abortions are certified in writing by a physician to the MO HealthNet agency that, in the physician's professional judgment, the life of the mother would be endangered if the fetus were carried to term[.]

(Emphasis added).

due, [I]/[the provider] agree[s] to accept payments reduced in proportion to the funding deficiency.[4]

The Missouri General Assembly funds MO HealthNet through appropriation and supplemental appropriation bills. During the 2021 legislative session, the General Assembly passed House Bill No. 11 ("HB 11"), which the governor signed into law. HB 11 appropriated approximately $12.6 billion in total funding for MO HealthNet for fiscal 2022.[5] In this appropriation, approximately $500 million was included for "physicians['] services and related services including, but not limited to, clinic and . . . family planning services[.]" *See* section 11.715 of HB 11. During the beginning of fiscal 2022, Planned Parenthood was reimbursed for physicians' services and family planning services from this corresponding $500 million appropriation in HB 11.

During the 2022 legislative session, the General Assembly provided supplemental appropriations to MO HealthNet for fiscal 2022 by creating HB 3014, which the governor signed into law. HB 3014 appropriated approximately $1.5 billion in additional funding for MO HealthNet for the remainder of fiscal 2022. In HB 3014, as it did in HB 11, the General Assembly appropriated funding for physicians' services and family planning

---

[4] Each Planned Parenthood entity in this matter had its own MO HealthNet provider participation agreement with slight variations in the terminology used. The quoted text of the agreement includes bracketed language to reflect these variations. For ease of reference, the agreements are collectively referred to as a singular agreement.

One bracket in the quoted text references the Medicaid Audit Compliance Unit. This entity is a unit within DSS that manages provider participation agreements and oversees the distribution of state resources, including whether authorized providers are eligible for reimbursement. The unit must notify authorized providers of any changes in interpretation or application of reimbursement requirements.

[5] In Missouri, the fiscal year runs from July 1 through June 30 of the following year. Thus, Fiscal 2022 ran from July 2021 through June 30, 2022.

services.    The supplemental appropriation for physicians' services amounted to $84 million.  *See* section 14.230 of HB 3014.  In HB 3014, the General Assembly included sections 14.277 and 14.2030.  Section 14.277 of HB 3014 states:

> For medical and health related services performed by any clinic, physician's office, or any other place or facility in which abortions are performed or induced other than a hospital, or any affiliate or associate of such clinic, physicians' office, or place or facility in which abortions are performed or induced other than a hospital
> From General Revenue Fund (0101) ……………………………$0
> From Federal and Other Funds (Various) ………………….......$0
> Total ………………………………………………………….$0

Section 14.2030 of HB 3014 states:

> In reference to all sections, except Section 14.277, in Part 1 and Part 2 of this act: No funds shall be expended to any clinic, physician's office, or any other place or facility in which abortions are performed or induced other than a hospital, or any affiliate or associate of any such clinic, physician's office, or place or facility in which abortions are performed or induced other than a hospital.

In response to HB 3014, DSS sent a letter to Planned Parenthood dated March 4, 2022, stating "any claims" submitted to DSS for reimbursement under the program after March 11, 2022, would be suspended.[6]  The letter stated DSS would deny claims after this date because Planned Parenthood was "ineligible for payments" pursuant to sections 14.277 and 14.2030 of HB 3014.  In other words, DSS notified Planned Parenthood it would cease to reimburse Planned Parenthood for physicians' or family planning services rendered to Medicaid-eligible individuals for the remainder of fiscal 2022.

---

[6] March 11, 2022, is the point at which the State determined there would be no remaining funds from HB 11 to cover Planned Parenthood's claims.

**Procedural Background**

In response, Planned Parenthood initiated this legal action against the State in the circuit court. Planned Parenthood sought declaratory judgment declaring HB 3014 unconstitutional and requested injunctive relief. In support of its request for relief, Planned Parenthood raised two constitutional claims in two separate counts in its petition filed in circuit court. Count 1 alleged HB 3014 violated article III, section 23 of the Missouri Constitution. Specifically, Planned Parenthood alleged HB 3014 included two separate and distinct categories of legislative action: 1) an appropriation, funding MO HealthNet; and 2) an amendment to substantive law, specifically sections 208.152 and 208.153, which modified the services and providers eligible for MO HealthNet reimbursement. Planned Parenthood claimed this infringed on article III, section 23's single subject requirement – a proscription against legislation containing multiple subjects. Count 2 alleged the State's decision to deny Planned Parenthood funding violated article I, section 2 of the Missouri Constitution, which guarantees equal protection. Specifically, Planned Parenthood alleged other authorized providers were able to receive MO HealthNet reimbursement for providing the same physicians' and family planning services as Planned Parenthood provided, depriving it of equal protection under the law to receive MO HealthNet reimbursement payments.

The State countered with procedural arguments urging the circuit court to dismiss Planned Parenthood's claims. Specifically, the State alleged Planned Parenthood failed to exhaust administrative remedies, lacked standing, and waived its right to bring these claims in the MO HealthNet provider participation agreements. Responding to the merits of

Planned Parenthood's two constitutional claims, the State contended HB 3014 did not violate the single subject or equal protection provisions of the Missouri Constitution.

After conducting a trial on stipulated facts and exhibits, the circuit court rejected the State's procedural arguments and found in favor of Planned Parenthood on both of its constitutional claims. Specifically, the circuit court entered judgment for Planned Parenthood "on *all* counts" finding a violation of both article III, section 23 (single subject) and article I, section 2 (equal protection) of the Missouri Constitution. (Emphasis added). The circuit court enjoined the State from denying any claim of reimbursement for MO HealthNet services made by Planned Parenthood solely due to lack of an appropriation.[7] The State appealed to this Court.[8]

On appeal, the State first argues the circuit court erred in entering judgment for Planned Parenthood due to three procedural grounds. Specifically, the State alleges Planned Parenthood failed to exhaust its administrative remedies, lacked standing to challenge HB 3014, and waived any claim of injury by entering into the MO HealthNet provider participation agreement. If the Court declines to vacate the circuit court judgment based on any of these procedural bases, the State contends in its appeal that the circuit court

---

[7] In its judgment, the circuit court also decreed the language in section 14.2030 of HB 3014 did not prohibit DSS from making payments to Planned Parenthood for services provided to eligible MO HealthNet providers; the appropriation in section 14.230 of HB 3014 was an appropriation available to all eligible MO HealthNet providers; and language purporting to deny Planned Parenthood access to funds that are otherwise available to other MO HealthNet providers was ineffective and/or unconstitutional.

[8] Because Planned Parenthood challenged the constitutional validity of HB 3014, this Court has exclusive appellate jurisdiction to review and decide this appeal pursuant to article V, section 3 of the Missouri Constitution.

also erred in entering judgment for Planned Parenthood because HB 3014 did not violate article III, section 23, Missouri's single subject constitutional requirement. Notably, the State does ***not*** argue and does not contend the circuit court erred in entering judgment for Planned Parenthood on its claim that HB 3014 violated article I, section 2 – the equal protection provision in Missouri's constitution.

## Standard of Review

All issues related to this appeal must be reviewed by this Court anew or *de novo*, and no discretion or deference may be provided to the legal determinations made by the circuit court. "Constitutional challenges to a statute are reviewed *de novo*." *Calzone v. Interim Comm'r of Dep't of Elementary & Secondary Educ.*, 584 S.W.3d 310, 315 (Mo. banc 2019) (internal quotation omitted). Questions raised regarding standing, failure to exhaust administrative remedies, and contractual interpretation are also reviewed *de novo*. *See Airport Tech Partners, LLP v. State*, 462 S.W.3d 740, 744 (Mo. banc 2015) ("Standing is a question of law that this Court reviews de novo."); *Coleman v. Mo. Sec'y of State*, 313 S.W.3d 148, 151 & n.4 (Mo. App. 2010) (reviewing *de novo* the circuit court's dismissal for failure to exhaust administrative remedies); *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO, Council 61 v. State*, 653 S.W.3d 111, 127 (Mo. banc 2022) ("Contract interpretation is a question of law, which this Court also reviews *de novo*.").

## Discussion

### *Standing*

"Standing is a threshold issue and a prerequisite to a court's authority to address substantive issues." *Byrne & Jones Enters. v. Monroe City R-1 Sch. Dist.*, 493 S.W.3d

847, 851 (Mo. banc 2016) (internal quotation omitted). "When standing is questioned, this Court must determine the issue of standing before examining the substantive issues in the case, as a lack of standing would require dismissal." *Wilson v. City of St. Louis*, 662 S.W.3d 749, 753 (Mo. banc 2023) (internal quotation omitted). "In an action seeking a declaratory judgment, the criterion for standing is whether the [claimant] has a legally protectable interest at stake in the outcome of the litigation." *Id.* (internal quotation omitted). "A legally protectable interest exists if the [claimant] is directly and adversely affected by the action in question or if the [claimant]'s interest is conferred by statute." *Weber v. St. Louis Cnty.*, 342 S.W.3d 318, 323 (Mo. banc 2011) (internal quotation omitted).

The State argues Planned Parenthood did not have standing to bring its constitutional claims because it has provided no evidence that it was directly and adversely affected by the State's implementation of HB 3014. At trial before the circuit court, however, the parties stipulated to a copy of the March 4, 2022, letter DSS sent to Planned Parenthood. The letter clearly confers standing to Planned Parenthood to bring its action against the State, as it establishes DSS would refuse to pay Planned Parenthood or even process its claims for reimbursement of health care services during the suspension period beginning just one week later even though Planned Parenthood had a valid provider agreement with DSS. DSS continued to reimburse other authorized providers for valid claims submitted during this period but communicated to Planned Parenthood it would cease to reimburse Planned Parenthood for valid claims. This establishes Planned Parenthood was directly and adversely affected by HB 3014 and the State's implementation

9

of this supplemental appropriation bill; Planned Parenthood, therefore, has standing to seek the declaratory judgment the circuit court entered in this case. *Wilson*, 662 S.W.3d at 753.

***Waiver***

The State argues the circuit court erred in entering judgment for Planned Parenthood because Planned Parenthood waived any claim to contest the lack of reimbursement in the MO HealthNet provider participation agreement. Missouri courts have recognized a party may contractually waive or relinquish rights to seek adjudication for suffered injuries, but the contract terms must be "unequivocal, plain, and clear." *Malan Realty Invs., Inc. v. Harris*, 953 S.W.2d 624, 626 (Mo. banc 1997). The MO HealthNet provider agreement states, in relevant part,

> If at any time state or federally appropriated funds available to the [Department of Social Services]/[Medicaid Audit and Compliance Unit]/[MO HealthNet Division] for payment to [me]/[the provider] for covered services under this agreement are insufficient to pay the full amount due, [I]/[the provider] agree[s] to accept payments reduced in proportion to the funding deficiency.

Thus, Planned Parenthood agreed to accept pro-rata payment when there was "insufficient" funding. The issue here, however, is not that DSS had insufficient funding to reimburse Planned Parenthood for the covered services it provided but, rather, that Planned Parenthood was deemed "ineligible for payments" and DSS would cease to make any reimbursement. The language in the agreement, therefore, does not unequivocally, plainly or clearly waive Planned Parenthood's right to seek relief in this case.

The General Assembly provided supplemental appropriations to DSS for fiscal 2022 by enacting HB 3014, which the governor signed into law. HB 3014 appropriated

10

approximately $1.5 billion in additional funding for MO HealthNet for the remainder of fiscal 2022, including funding specifically appropriated for physicians' services and family planning services. *See* section 14.230 of HB 3014. Despite this supplemental appropriation, the State claims there was inadequate appropriation because HB 3014's sections 14.277 and 14.2030 prevented reimbursement to Planned Parenthood. But whether these sections of HB 3014 establish "insufficient appropriation" turns entirely on their constitutional validity. If these sections of HB 3014 are unconstitutional, as the circuit court found, then there was more than sufficient appropriated funding to reimburse Planned Parenthood for covered services, and the waiver would not apply. For these reasons, Planned Parenthood did not clearly and unequivocally waive any claim of injury under these circumstances.

### Exhaustion of Administrative Remedies

The State alleges the circuit court erred in entering judgment for Planned Parenthood because Planned Parenthood failed to exhaust its administrative remedies. It is true, a party must exhaust administrative remedies before raising a challenge against an agency in circuit court. *Farm Bureau Town & Country Ins. Co. of Mo. v. Angoff*, 909 S.W.2d 348, 353 (Mo. banc 1995). Under Missouri law, an authorized MO HealthNet provider who has been denied reimbursement for a covered service is entitled to pursue an administrative remedy before the administrative hearing commission ("AHC"). Section 208.156.2. There are, however, limited exceptions to the requirement to exhaust administrative remedies.

11

"Where there is a constitutional challenge to a statute which forms the *only* basis for granting declaratory judgment, exhaustion of administrative remedies is not required." *Farm Bureau*, 909 S.W.2d at 353. Authorized MO HealthNet providers who are denied reimbursement by DSS may seek administrative review and remedies before the AHC pursuant to Missouri law, but the AHC, like other administrative tribunals, does not have the authority to find a statute unconstitutional and grant declaratory and injunctive relief accordingly. *Planned Parenthood of St. Louis Region v. Dep't of Soc. Servs., Div. of Med. Servs.*, 602 S.W.3d 201, 208 (Mo. banc 2020); *see also Geier v. Mo. Ethics Comm'n*, 474 S.W.3d 560, 564 (Mo. banc 2015). The AHC has authority to determine whether DSS illegally, or otherwise improperly, denied or withheld reimbursement to an authorized provider, but not based on a genuine allegation that a statute is unconstitutional. *Planned Parenthood*, 602 S.W.3d at 208; section 621.055. Only courts within the Missouri judiciary, not tribunals under the state's executive branch, have the authority to determine a statute or legislative enactment to be unconstitutional. *State Tax Comm'n v. Admin. Hearing Comm'n*, 641 S.W.2d 69, 75 (Mo. banc 1982).

Had Planned Parenthood first pursued its claims before the AHC, the AHC would not have been able to provide the relief requested. Because Planned Parenthood exclusively sought relief based on the constitutional validity of HB 3014 and the AHC would not have been able to provide adequate – or any – relief for these claims, Planned Parenthood was not required to bring its claims before the AHC. For these reasons, Planned Parenthood did not need to exhaust its administrative remedies before bringing its declaratory action in the circuit court.

***Failure to Challenge Equal Protection Claim***

The State's remaining points on appeal concern the constitutional validity of HB 3014 under article III, section 23. The merits of these arguments, however, need not be reached because the State does not appeal the circuit court's judgment for Planned Parenthood on its equal protection claim. Because an independent legal basis for affirming the circuit court's judgment was not appealed, the circuit court's judgment must be affirmed. *City of Harrisonville v. Mo. Dep't of Nat. Res.*, 681 S.W.3d 177, 183 (Mo. banc 2023). Even if this Court were to accept the State's arguments and find HB 3014 did not violate article III, section 23, this Court must affirm the circuit court's judgment because the State does not contend the circuit court erred in entering judgment on Planned Parenthood's equal protection claim.

This Court cannot review the circuit court's judgment with respect to Planned Parenthood's constitutional challenges *ex gratia*. Rule 84.13(a) states "allegations of error not briefed or not properly briefed shall not be considered in any civil appeal . . . ." "It is not this Court's role to make an appellant's argument. This ensures the opposing party has proper notice and opportunity to respond and brief the argument." *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 852 (Mo. banc 2018) (internal citation omitted). Because it would be improper for this Court to review the circuit court's entry of judgment on the equal protection claim when this issue was not briefed or raised on appeal, this Court must refrain from addressing the State's single subject constitutional argument given that the circuit court's judgment can be affirmed on an alternative basis.

> [F]or decades, and for prudential reasons, this Court has held fast to the principle that [a] court will avoid the decision of a constitutional question if the case can be fully determined without reaching it. This Court has recently and repeatedly reaffirmed this important principle of not reaching constitutional issues unless necessarily required.

*Hink v. Helfrich*, 545 S.W.3d 335, 343 (Mo. banc 2018) (alteration in original) (internal citations and quotations omitted). The Court, therefore, must affirm the circuit court's judgment without addressing either the article III, section 23 (single subject) or the article I, section 2 (equal protection) constitutional claim.

In response to this legal reality, the State suggests the circuit court did not render a judgment as to both of Planned Parenthood's constitutional claims. Essentially, the State contends the circuit court's judgment merely addressed and resolved Count I of the petition, Planned Parenthood's single subject claim.[9] In line with this argument, the State's appeal and briefing references only the circuit court's error in entering judgment for Planned Parenthood based on the single subject claim, not the equal protection claim. Yet the judgment clearly stated it is in regard to "all counts," and the State acknowledged as much in the jurisdictional statement it filed as part of this appeal. There, the State submitted Planned Parenthood filed a two-count petition, the parties had a trial on "the counts" in the petition, and the circuit court issued a judgment in favor of Planned Parenthood "on all

---

[9] For this Court to have jurisdiction over an appeal, "the judgment entered by the circuit court and appealed by the parties must have been a 'final judgment' as that phrase is used in section 512.020(5)." *Wilson v. City of St. Louis*, 600 S.W.3d 763, 765 (Mo. banc 2020). "A final judgment resolves all issues in a case, leaving nothing for future determination." *Id.* at 768 (internal quotation omitted). Had the circuit court not rendered a judgment as to the equal protection claim, there would be no final judgment, and this Court would not have jurisdiction to hear this appeal.

counts." Thus, it is clear there were two independent constitutional bases for the circuit court to enter judgment for Planned Parenthood – a violation of the Missouri Constitution's single subject provision and a violation of the Missouri Constitution's equal protection provision. Even if this Court reviewed the judgment entered against the State on Planned Parenthood's single subject claim, the circuit court's judgment would ultimately be affirmed because the equal protection claim was not appealed and would remain an independent basis for entering the circuit court's judgment. *City of Harrisonville*, 681 S.W.3d 177 at 183.

## Conclusion

Because the State does not appeal the circuit court's judgment as to all counts, this Court affirms.

                                       _____

                                       W. Brent Powell, Judge

Russell, C.J., Ransom, Wilson, Broniec and
Gooch, JJ., concur; Fischer, J., concurs in
separate opinion filed.

15



# SUPREME COURT OF MISSOURI
## en banc

PLANNED PARENTHOOD OF THE )
ST. LOUIS REGION, ET AL., )
                             )
    Respondents, )
                             )
v. )    No. SC99966
                             )
ROBERT KNODELL, IN HIS OFFICAL )
CAPACITY AS ACTING DIRECTOR OF )
THE MISSOURI DEPARTMENT OF )
SOCIAL SERVICES, ET AL., )
                             )
    Appellants. )

## CONCURRING OPINION

I concur in the principal opinion and write separately to reiterate that, in my view, article III, § 23 of the Missouri Constitution unambiguously exempts appropriation bills from the single subject requirement. *See Planned Parenthood of St. Louis Region v. Dep't of Soc. Servs., Div. of Med. Servs.*, 602 S.W.3d 201, 213 (Mo. banc 2020) (Fischer, J., dissenting). The recurring argument that article III, § 23 applies to appropriation bills is incorrect, and cases holding otherwise are wrongly decided.

Before turning to the text of § 23, it bears repeating this Court's role in constitutional interpretation. More than 170 years ago, this Court explained the constitutional separation of powers requires this Court to interpret constitutional provisions according to "their

natural and original meaning" even if perceived policy considerations may justify a different interpretation. *Hamilton v. St. Louis Cnty. Ct.*, 15 Mo. 3, 23-24 (1851). These same principles – implicit in our constitutional form of government – apply with equal force today. *Doyle v. Tidball*, 625 S.W.3d 459, 463 (Mo. banc 2021) (holding "[t]his Court's primary goal in interpreting Missouri's constitution is to 'ascribe to the words of a constitutional provision the meaning that the people understood them to have when the provision was adopted'") (quoting *State v. Honeycutt*, 421 S.W.3d 410, 414-15 (Mo. banc 2013)). "Constitutional construction is not required if the words at issue are plain and unambiguous." *Saint Louis Univ. v. Masonic Temple Ass'n of St. Louis*, 220 S.W.3d 721, 726 (Mo. banc 2007).

Assessed against these standards, the text of article III, § 23 could not be more direct or clear. Section 23 provides, "No bill shall contain more than one subject which shall be clearly expressed in its title, ***except ... general appropriation bills***, which may embrace the various subjects and accounts for which moneys are appropriated." (Emphasis added). The constitutional text clearly states the general requirement that a bill cannot contain more than one subject. It then specifically provides an exception for "general appropriation bills," which may include more than one subject. The unambiguous clarity of this language shows article III, § 23 single subject requirement means exactly what it says: the single subject requirement does not apply to appropriation bills.

2

Nonetheless, this Court has erroneously held article III, § 23 applies to appropriation bills.[1]  The fundamental flaw in the analysis has been to rely on extraneous policy considerations unrelated to the unambiguous text of § 23.  *Planned Parenthood*, 602 S.W.3d at 214 (Fischer, J., dissenting).  While *stare decisis* demands some respect for these decisions, this Court is not bound to forever follow decisions that are patently incorrect.  Indeed, this Court's precedent has also long recognized "*stare decisis* is never applied to prevent the repudiation" of a "clearly erroneous and manifestly wrong" decision.  *Novak v. Kan. City Transit, Inc.,* 365 S.W.2d 539, 546 (Mo. banc 1963) (quotation omitted).  This is particularly true in matters of constitutional interpretation, when the error is of this Court's own making and is not susceptible to legislative correction.  *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 387 (Mo. banc 2014) (Fischer, J., dissenting); *see also California v. F.E.R.C.,* 495 U.S. 490, 499 (1990) (explaining that statutory interpretations are given greater *stare decisis* effect than constitutional interpretations because the legislature can amend a statute).

The impetus to bring this Court's precedent in line with the unambiguous text of article III, § 23 is amplified by fact this Court's past misinterpretations unduly restrict the General Assembly's plenary legislative power.  Article III, § 1 of the Missouri Constitution grants plenary legislative power to the General Assembly, unless clearly limited by another constitutional provision.  *Bd. of Educ. of City of St. Louis v. City of St. Louis*, 879 S.W.2d

---

[1] *See Rolla 31 Sch. Dist. v. State*, 837 S.W.2d 1, 4 (Mo. banc 1992); *State ex rel. Davis v. Smith*, 75 S.W.2d 828, 830 (Mo. banc 1934); *State ex rel. Hueller v. Thompson*, 289 S.W. 338, 340-41 (Mo. banc 1926).

530, 533 (Mo. banc 1994). Any limitation of that plenary legislative power, should be construed strictly. *Id*. The single subject requirement is, of course, a limit on the exercise of legislative power. But there is no principle of construction, strict or otherwise, supporting this Court's precedent holding that appropriation bills are subject to the article III, § 23 single subject requirement when the unambiguous text provides they are not. In my view, the most principled and consistent way to resolve these cases in the future is to apply the unambiguous text of article III, § 23 as it is written and to hold the single subject requirement does not apply to appropriation bills.

_____
Zel M. Fischer, Judge

4