## Com. ex rel. Greene, Appellant, v. Gregg et al.

*Constitution—General appropriation bill—Prothonotary of Supreme Court.*

The general appropriation bill of 1893 appropriating a sum " for the payment of the salary of a clerk in the offices of the prothonotaries of the Supreme Court," etc., does not violate section 15, art. 3, of the Constitution, which provides that " the general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the commonwealth."

The legislature is the exclusive judge of the form in which its enactments shall be put, and its mandate in that respect cannot be questioned unless it transgresses a plain prohibition of the constitution. . . . In regard to the particular item under consideration, it appears to be intended to pay for a part of the regular and ordinary work of the offices named, and therefore to be for their ordinary expenses. It is a recognition by the legislature that the prothonotary cannot do the whole work of his office proprio manu, and an authority to him to have a portion of it done at the public cost. By MR. JUSTICE MITCHELL.

Argued Feb. 16, 1894. Appeal, No. 15, May T., 1894, by plaintiff, Commonwealth ex rel. Charles S. Greene, prothonotary of the Supreme Court of Pennsylvania for the Eastern District, from order of C. P. Dauphin Co., Jan. T., 1894, No. 444, refusing mandamus against D. McM. Gregg, auditor general, and J. W. Morrison, state treasurer. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Petition for mandamus.

The facts appear by the following opinion of the court below, by SIMONTON, P. J. :

" The general appropriation act of 1893, P. L. 308, contains the following item : ' For the payment of the salary of a clerk in the office of the prothonotaries of the Supreme Court for the eastern and western districts, respectively, two years, the sum of four thousand eight hundred dollars, or so much thereof as may be necessary.'

" On the day this act was approved, Lewis C. Greene was appointed a clerk in the office of the prothonotary of the eastern district, at Philadelphia, and has discharged the duties of such

clerkship, and his services were necessary for the transaction of the business of said office.

" Thereafter proper evidence of the appointment and service of said Lewis C. Greene, as such clerk, was presented to the auditor general of Pennsylvania, one of the respondents, and he was requested to draw his warrant on the treasurer of the state of Pennsylvania, the other respondent, for $280, the amount to which it was claimed the clerk was entitled, as salary for the quarter ending August 31, 1893 ; but the auditor general refused to draw, and the state treasurer refused to approve and pay, such warrant, giving as their reason for refusing that there is no legal authority for the appointment of such clerk, nor for the payment to him by the state treasurer of any portion of said appropriation, nor any legal authority for the drawing and approval of a warrant therefor by the auditor general, because no act of assembly had ever been passed creating the office or legalizing the appointment.

" Thereupon a petition was presented to this court by Charles S. Greene, the prothonotary of the Supreme Court for the eastern district of Pennsylvania, for an alternative mandamus, to be directed to said auditor general and state treasurer, commanding them to draw and pay said warrant, or show cause why they should not do so.

" In response to this petition, the auditor general and state treasurer, by the attorney general, appeared and filed an answer ; and the following agreement was also filed :

" ' It is agreed between the counsel for the petitioner and the attorney general for the commonwealth, in the above proceeding, that the matter shall be heard and determined by the court below upon petition and answer filed, in the same manner and to the same effect as if a demurrer had been filed to the answer made by the officers of the commonwealth, respondents.

" ' And it is further agreed that the question upon which the opinion and judgment of the court herein is desired is whether or not, under the terms of the act of June 6, 1893, P. L. 308, the appropriation therein made for a clerk in the offices of prothonotary of the Supreme Court for the eastern and western districts, respectively, may be lawfully paid by the auditing and fiscal officers of the commonwealth without further legislation formally establishing such an office.

" ' It is further agreed that the judgment in this case shall be final and conclusive as to the rights of the prothonotary of the Supreme Court for the western district under the same law.

" ' It is further agreed, that each party to this proceeding reserves the right to appeal to the Supreme Court.'

" The act of May 22, 1722, 1 Sm. L. 141, creates the office of prothonotary or clerk of the Supreme Court, and requires him to keep his office at some convenient place in the city of Philadelphia.    This act is supplied by the act of April 14, 1834, P. L. 342, § 10, which is as follows :

" ' A prothonotary or clerk shall be appointed for the said Supreme Court, at each of the places of holding the same, aforesaid ; he shall have the custody of the records and seal of the court for the respective districts, and keep the same at the place of holding such court, and in the apartments provided by authority of law for that purpose ; he shall faithfully perform, under the direction of the court, all the duties appertaining to his office.'

" The fees of prothonotaries of the Supreme Court are fixed by the act of February 22, 1821, § 4, Purd. p. 780 ; and the act of April 2, 1868, § 8, P. L. 11, enacts that 'prothonotaries or clerks of the Supreme Court . . . . shall pay into the treasury for the use of the commonwealth, after deducting all necessary clerk hire and office expenses, fifty per centum of the amount of any excess over and above the sum of $2,000 which shall be found by the auditor appointed by the court to settle accounts of county officers to have been received by any officer in any one year.'

" Combining the force and effect of these acts, we find that by the act of 1834, the prothonotary of each district is required to ' faithfully perform, under the direction of the court, all the duties appertaining to his office ; ' that the fees allowed as compensation for the performance of these duties are fixed by the act of 1821 ; and that the act of 1868 requires the prothonotary, after deducting all necessary clerk hire and office expenses and a compensation of $2,000, to pay into the treasury of the state one half of any excess received as fees ; thus fixing his maximum compensation at $2,000 and one half of such excess.

" It thus appears that when the appropriation in question was made the duties of the prothonotaries respectively were

defined and their compensation was determined by law. No additional duties were imposed upon them by the appropriation act, or by any other law, nor was there any law enacted increasing their compensation; the legislature did nothing but make an appropriation to each of them of $2,400 yearly, for two years, to pay for the services of a clerk in their offices, respectively. But, as we have seen, the act of 1834, still in force and unrepealed, requires the prothonotary to perform all the duties pertaining to his office in return for the fees allowed by law. The effect of the appropriation is, therefore, to give him compensation in addition to that allowed him by law, and we are unable to see how this can be anything else than a mere gratuity, such as the legislature has no right to confer.

" We have no doubt that the legislature could legally create the office of clerk to the prothonotary of the Supreme Court and provide for his compensation by a salary, just as they could by law increase the fees or compensation of the prothonotary himself, but we think in either case this would have to be done by a separate act of assembly, and that in the absence of such an act an appropriation merely of a sum of money, whether called salary, compensation or by any other term, would be a mere gratuity, and, hence, illegal.

" If, as was stated in argument on behalf of the relator, there are persons performing services in the various state departments whose only right to compensation is derived from appropriations to pay their salaries, without any previous designation by law of the offices or positions held by them, or of the amount of their compensation, no question of the rights of such persons is before us, nor can they in any way affect the decision in this case.

" It is altogether probable that the fees fixed at so early a day as 1821 are too small, and that the compensation of prothonotaries of the Supreme Court is inadequate; but if this be the case, the remedy lies with the general assembly in the orderly course of legislation, and cannot be applied by making appropriations not warranted by existing laws.

" For the reasons above indicated, the mandamus is refused, and judgment is directed to be entered in favor of the respondents."

*Error assigned* was refusal of mandamus.

*Robert Snodgrass,* for appellant.

*W. U. Hensel,* attorney general, *James A. Stranahan,* deputy attorney general, with him, for appellee.

Opinion by Mr. Justice Mitchell, May 21, 1894:

The sole question presented is whether the item of the general appropriation bill of 1893, appropriating a sum "for the payment of the salary of a clerk in the offices of the prothonotaries of the Supreme Court," etc., is a valid authority to the auditor general and state treasurer to issue and pay warrants for that purpose. The learned court below held that as the compensation of the prothonotary is fixed by the acts of Feb. 22, 1821, and April 2, 1868, and no new duties are imposed by the present act, it was a mere gratuity and in violation of the constitution. In so holding, however, the learned court was careful to say that it had " no doubt that the legislature could legally create the office of clerk to the prothonotary of the Supreme Court and provide for his compensation by a salary, just as they could by law increase the fees or compensation of the prothonotary himself, but in either case this would have to be done by a separate act." This position is also conceded by the appellees in the argument of the present case.

It is uncontroverted therefore that the legislature could do the substantial thing, and the only question is whether it could do it in the present form. In general it will not be disputed that the legislature is the exclusive judge of the form in which its enactments shall be put, and its mandate in that respect cannot be questioned unless it transgresses a plain prohibition in the constitution. The only provision invoked here is section 15 of article 3, " the general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the commonwealth," etc. The history and purpose of that section are well known. It was aimed at the objectionable practice of putting a measure of doubtful strength on its own merits, into the general appropriation bill, in legislative phrase tacking it on as a rider, in order to compel members to vote for it or bring the

wheels of government to a stop. The same constitutional intent is embodied in section 16 of article 4 giving the governor power to disapprove separate items of appropriation bills. It is the practice of thus forcing the passage of extraneous matters not germane to the purpose of the bill itself, that was intended to be abolished. As to general legislation the same object among others was secured by the provision of section 2 of article 3 that " no bill, except general appropriation bills, shall be passed, containing more than one subject." General appropriation bills from their nature usually cover a number of items, not all relating strictly to one subject. They were therefore excepted from the requirement of section 2, and this exception necessitated the special section 15 relating to them. The object of both is the same. Is the present measure within the mischief that was intended to be prohibited? The instances cited by the appellant covering a period of twenty years since the adoption of the constitution, show the legislative understanding on the subject, and we may fairly infer that of the executive also, as the various acts cited were approved by the governors. Such understanding and practice are not, of course, binding on the judiciary, who are the ultimate authority in the interpretation of the constitution; but, as the view of the two co-ordinate branches of the government, they are entitled to respectful consideration and persuasive force if the matter be at all in doubt.

It cannot be assumed that the constitution meant to compel the legislature even to supervise all the details of the government. That is properly the function of the executive and judicial branches. What work there is to be done, and what clerical force is requisite to do it, is a question of detail as to which much must necessarily be left to the head of each department. It is clearly the legislative province to keep a general control over the expenditure of the public funds, but this it does so long as no money is paid out without a previous appropriation for that purpose. While it thus holds the purse strings it controls the whole subject as completely as its proper functions under the constitution demand. In passing general appropriation bills the constitution limits them to the " ordinary expenses of the executive, legislative and judicial departments," and some other enumerated matters, and every valid appropriation in this form must appear to be reasonably within the description of " or-

dinary expenses," but it would be sticking in the bark to require a separate bill to be passed every time an additional clerk was to be appointed in a public department. In regard to the particular item under consideration, it appears to be intended to pay for part of the regular and ordinary work of the offices named, and therefore to be for their ordinary expenses. It is a recognition by the legislature that the prothonotary cannot do the whole work of his office proprio manu, and an authority to him to have a portion of it done at the public cost. By such recognition and authority it becomes a part of the ordinary expenses of his office, and that his office is a part of the judicial department of the commonwealth does not admit of question. As already said, it is conceded on all hands that the legislature had ample power to do the substantial thing that it did, to wit, to authorize the appointment of a clerk in the office of the prothonotary and provide for his salary out of the public treasury, and as the purpose of such appointment and the duties of the appointee were to secure the performance of the regular and ordinary work of the office, we are of opinion that the legislature might constitutionally do it in the form they did, by an item in the general appropriation bill for the judicial department.

Judgment reversed and mandamus ordered to be awarded as prayed.