# Renshaw *v.* Mayor and Select and Common Councils of Philadelphia, Appellants.

*Magistrates—Committing magistrates—Philadelphia—Appointment—Act of April 9, 1873, P. L. 575—Constitution of Pennsylvania schedule, Section 11.*

The Act of April 9, 1873, P. L. 575, empowering the mayor of the City of Philadelphia to appoint a person learned in the law to sit as committing magistrate at the police station adjoining his office, has been repealed by the Constitution and the duties of a committing magistrate at such police station may now be exercised lawfully only by one of the magistrates of the City of Philadelphia designated by the mayor.

Mr. Justice MOSCHZISKER dissents.

Argued Jan. 7, 1915. Appeal, No. 217, Jan. T., 1914, by defendants, from decree of C. P. No. 5, Philadelphia Co., March T., 1914, No. 3500, awarding mandamus in case of Benjamin H. Renshaw v. the Mayor and Select and Common Councils of the City of Philadelphia, Rudolph Blankenburg, Mayor of said City; Harry C. Ransley, President of Select Council of said City, George D. McCurdy, President of Common Councils, and the members of Select and Common Councils, naming them. Before POTTER, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Petition for mandamus. Before RALSTON, J.

On January 17, 1914, the mayor of Philadelphia appointed Benjamin H. Renshaw, a member of the bar, to sit as committing magistrate in Central Station. Mr. Renshaw did not hold the office of magistrate in the city, and the mayor made the appointment under the provisions of the Act of April 9, 1873, P. L. 575. He also sent a message to councils requesting them to make an appropriation for the payment of the salary of $2,500 provided for by the act. This councils refused to do,

and Mr. Renshaw instituted this proceeding to compel councils to make the appropriation.

The court sustained the demurrer to the return and awarded a peremptory mandamus to compel the defendants to make an appropriation for the payment of the plaintiff's salary.   The select and common councils appealed.

*Error assigned* was the decree of the court.

*James Gay Gordon, Jr.,* Assistant City Solicitor, with him *Michael J. Ryan,* City Solicitor, for appellants.—The Act of April 9, 1873, P. L. 575, is inconsistent with and has been superseded by the Constitution of 1874.

*Thomas Raeburn White,* with him *E. B. Richards,* for appellee.—The Act of April 9, 1873, P. L. 575, was not expressly repealed by the Constitution of 1874. There is nothing in the said Act of 1873 inconsistent with the Constitution and the act, therefore, the Act of 1873 was not repealed by the Constitution: Lehigh Iron Co. v. Lower Macungie Twp., 81 Pa. 482; Wattson v. Chester & Delaware River R. R. Co., 83 Pa. 254; Indiana County v. Indiana County Agricultural Soc., 85 Pa. 357; Perkins v. Slack, 86 Pa. 270; County of Allegheny v. Gibson, 90 Pa. 397.

OPINION BY MR. JUSTICE ELKIN, March 8, 1915:

The question involved in this controversy is the power of the mayor to appoint a person learned in the law to sit as a committing magistrate in the central police station of the City of Philadelphia under the Act of April 9, 1873, P. L. 575.   The answer to the question must of necessity depend upon constitutional requirement and statutory enactment.   The appellee, although learned in the law and well fitted to perform the duties assigned to him, is not a magistrate, and aside from his

appointment has no power to exercise judicial functions. The question for decision is solely one of law and will be so considered. While the history of the mayor's court is interesting and the several acts of assembly relating thereto instructive, for the purposes of the present case, it will only be necessary to refer to the Act of March 28, 1860, P. L. 318, and the Act of April 9, 1873, P. L. 575, and the Act of February 5, 1875, P. L. 56, and the present Constitution. Article V, Section 12, of the Constitution abolished the office of alderman, and substituted for it the office of magistrate, vesting the magistrates with the jurisdiction and powers of aldermen in both civil and criminal cases. After the new Constitution went into effect the office of alderman no longer existed in the City of Philadelphia, but the jurisdiction and powers theretofore exercised by aldermen were transferred to magistrates. To make this provision of the Constitution effective the Act of 1875 above referred to was passed. Prior to the adoption of the Constitution, the mayor could appoint any one of the aldermen of the city to sit as a committing magistrate at the police station adjoining his office under the Act of March 28, 1860, P. L. 318, or if he chose to do so could appoint a person learned in the law, but not an alderman, to sit in the same station and for the same purpose under the Act of April 9, 1873, P. L. 575.

A committing magistrate performs judicial functions and therefore must be regarded as a judicial officer within the limits of his jurisdiction. In this connection it is important to keep in mind what the Constitution requires as to the exercise of judicial power. In Article V, Section 1, of the Constitution, it is provided that:

"The judicial power of this Commonwealth shall be vested in a Supreme Court, in Courts of Common Pleas, of Oyer and Terminer, and General Jail Delivery, Courts of Quarter Session of the Peace, Magistrates' Courts, and in such other courts as the general assembly may from time to time establish."

There can be no doubt that the framers of the organic law intended to vest all judicial power in the courts expressly enumerated therein, and in such other courts as might subsequently be established from time to time by the legislature. The language above quoted is not susceptible of any other reasonable interpretation. The intention to abolish all other courts clearly appears in Section 11, of the Schedule to the Constitution, wherein it is provided, that:

"All courts of record, and all existing courts which are not specified in this Constitution, shall continue in existence until the first day of December in the year 1875, without abridgment of their present jurisdiction, but no longer."

When that provision was written into the schedule magistrates' courts were unknown in the City of Philadelphia, and we see no escape from the conclusion that all the then existing courts not specified in the Constitution were intended to be abolished. If, as is contended, the court held in central station was different in character from that of an alderman, or if it had some special functions to perform in connection with the office of mayor, or if it be considered as a continuation of the mayor's court, it was still an existing court at that time, which was not specified in the Constitution, and was therefore intended to be abolished. Learned counsel for appellee contend that it was not intended to abolish this particular court because it performed the functions of a magistrate's court and is therefore saved from the wreck of those courts which the Constitution abolished. This argument is plausible but not convincing. The same reasoning might apply to district and other special courts which were abolished. All of these courts performed some functions of the Common Pleas, Oyer and Terminer, Courts of Quarter Sessions, and of other courts then existing. We find nothing in the Constitution to indicate that it was the intention of its framers to continue in existence a special court to be

held in central station in the City of Philadelphia, and if there was such a court in existence when the Constitution was adopted, and this to say the least is a very doubtful question, it must be regarded as having been abolished like all other then existing courts not specified in the organic law. What has been said only refers to the argument that the court held in central station was specially constituted and not of the same character as that of an alderman or other committing magistrate. The provisions of the Constitution relating to the abolishment of courts must be read and understood as applicable to conditions existing when the organic law became operative, at which time there was no such thing as magistrates' courts in the City of Philadelphia. What the Constitution intended was to abolish the office of alderman, and all courts of inferior jurisdiction, and to substitute therefor and thereafter magistrates' courts, having similar jurisdiction and power. This intention clearly appears in the schedule annexed to and made part of that instrument. If, however, central station be regarded, as we think it should be, simply as a police station where an alderman, or a person properly qualified and duly appointed, sat as a committing officer prior to the adoption of the Constitution, and where a magistrate is authorized to sit since the Constitution was adopted, the situation is clarified and the difficulties here presented largely disappear. If central police station be so regarded, the only question left for decision is who shall make the selection of the magistrate to sit in that station. Section 16, of the Act of February 5, 1875, P. L. 56, provides as follows:

"The said magistrates shall, from time to time, select from among their number such magistrates as shall be necessary to act as committing magistrates at the several police stations in the City of Philadelphia, and in doing so they shall in all cases assign magistrates to duty at the station or stations which shall be most convenient to the place where their courts are held; no

magistrate shall receive any additional compensation
for acting as committing magistrate at any police sta-
tion."

Under this statutory authority the magistrates con-
tend that they have the right to select from among their
number a magistrate to act as a committing magistrate
in central police station; on the other hand, the mayor
claims the right to select the magistrate to sit in central
police station, and this right has been exercised by the
mayor for a period of almost forty years. That the
question thus raised is not free from difficulty may be
conceded. The answer must of necessity depend upon
the interpretation to be given the language used in the
section of the Act of 1875 above quoted. It will be
noticed that central police station is not mentioned in
this section of the act, nor is there any reference to the
power of the mayor to select a magistrate to sit in that
station. The magistrates are given the power to select
from among their number such magistrates as shall be
necessary to act as committing magistrates at the several
police stations, and in making the selection they are to
assign magistrates to duty at the station or stations
most convenient to the place where their courts are held.
A reasonable interpretation of this language is that the
magistrates are empowered to select from among their
number as many as shall be necessary to act as com-
mitting magistrates at the several police stations lo-
cated most conveniently to the place where their courts
are held in the several parts of the city, but that it was
not intended by this act to include central police sta-
tion as a place where the magistrates had the right to
select one of their number to sit. When the Act of 1875
was passed, the mayor had exercised the power to ap-
point the committing officer who presided at the central
police station for a long period of years, and if the legis-
lature intended to take from him this power of selection
or appointment, it is but reasonable to hold that it should
have done so by express language, or at least by the use

of words from which such implication would imperatively arise. The legislature did not do so and the presumption is that it did not intend to accomplish this result by words of doubtful implication. This view is strengthened by the executive practice and understanding of the city, acquiesced in by the legislative and all other branches of the municipal government, for a long period of years. Such understanding and practice are not absolutely binding upon the judiciary; but, as the view of those branches of government whose duty it is to enforce and administer the law, they are entitled to respectful consideration and persuasive force if the matter be at all in doubt: Com. v. Gregg, 161 Pa. 582; Com. v. Barnett, 199 Pa. 161, at pages 176 and 177.

Under the Act of March 28, 1860, P. L. 318, the mayor had the power to appoint an alderman to sit as a committing magistrate in central station, and since the jurisdiction and powers of aldermen are now exercised by magistrates, the transfer of which powers was clearly contemplated by the Constitution, there is no difficulty in holding that the power of the mayor still exists to appoint from among the number of magistrates who now perform these functions one to sit as a committing magistrate in central police station. The Act of March 28, 1860, P. L. 318, was not repealed by the Act of April 9, 1873, P. L. 575, the latter act simply enlarged the field from which the mayor might select a person to sit as committing magistrate. Prior to the adoption of the Constitution, the mayor could appoint either an alderman or a person learned in the law to sit in central police station; but since the adoption of the Constitution his choice is limited to magistrates clothed with power to perform such functions. The Constitution and Act of February 5, 1875, P. L. 56, must be held to have repealed the Act of April 9, 1873, P. L. 575, giving the mayor the power to appoint a person learned in the law, but not a magistrate, to sit in central police station. It, perhaps, is needless to say that the situ-

ation which gives rise to the present controversy is limited to the City of Philadelphia, because of the provision in the Constitution relating to the election of magistrates in that city. The authorities cited by learned counsel for appellee, calling our attention to the practice in other parts of the Commonwealth, are without application to the facts of the case at bar. The present case depends entirely upon the constitutional provision and statutes relating to magistrates in the City of Philadelphia and the statutory power of the mayor in that city to appoint a magistrate to sit in central police station.

Decree reversed, demurrer to the return filed by defendants overruled, and petition dismissed. Costs of this appeal to be paid by appellee.

Mr. Justice MOSCHZISKER dissents.