THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN MÁRQUEZ CARRIÓN, Defendant and Appellant.

No. 9888. Argued March 24, 1943.—Decided May 18, 1943.

*Juan Nevárez Santiago* for appellant.  *R. A. Gómez, Prosecuting Attorney (Fiscal)*, and *Luis Negrón Fernández, Assistant Prosecuting Attorney*, for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Juan Márquez Carrión was charged before the Municipal Court of Fajardo with having assaulted Juan Rodríguez López with a dagger. The complaint ends thus:

"(Signed) Perciliano de Jesús, Insular Policeman No. 432, Informer.—Sworn to before me this 7th day of November 1940.—(Signed) H. Figueroa (*sic*), Deputy Clerk of the Municipal Court of Fajardo."

The District Court of Humacao, upon deciding the case on appeal, rendered judgment sentencing the defendant to pay a $50 fine. Márquez appealed assigning as an only error the one claimed to have been committed by the district court "in dismissing the legal issue raised by the defendant to the effect that the District Court of Humacao lacked jurisdiction because the complaint had not been sworn to before an officer authorized to administer oaths, as there is no office of deputy clerk in the Municipal Court of Fajardo, nor is José Figueroa (*sic*) deputy clerk of said court, for there is no law in Puerto Rico creating said office."

The argument under the assignment is limited to the following:

14

"The defendant calls the attention of this Honorable Court to the fact that when the Municipal Court of Fajardo was created, its staff was limited to the following officers: a judge, a clerk, and a marshal.

"Later in the General Appropriation Act for the year 1936, two offices of deputy clerk and an office of deputy marshal were included, but said offices were not created by special acts, nor in any other way, and their duties have in no way been defined by law. Therefore, José Figueroa (*sic*) had no authority to administer the oath in the complaint which gave rise to the judgment appealed from to this Honorable Court, and as the question was raised in due time before the Honorable District Court of Humacao, the defendant believes that the reversal of the judgment rendered against him lies, and he requests that result from this Honorable Court."

■■ In the case of *People* v. *District Court*, 48 P.R.R. 479, 483, this court decided that the office of municipal judge at large could not be created by the General Appropriation Act. In its opinion it stated as follows:

"The provision which is attacked is not confined to fixing an appropriation to cover an ordinary expenditure of a department of the Government. It goes much further, since it creates an important office such as that of Municipal Judge at Large, and provides, in addition, that he must be a lawyer, and that he may be designated by the Attorney General to act in cases of disqualification, vacancy, or absence of a municipal judge. This is legislation of a general character which may not be included in an appropriation bill. *Constitutional Defense League* v. *Waters*, 164 A. 613, 309 Pa. 545; *State ex rel. Davis* v. *Smith*, 75 S. W. (2d) 828."

From the opinion of this court in the case of *Landrón* v. *Quiñones*, 52 P.R.R. 82, 86, we copy the following:

"In support of the third assignment appellants cite *People* v. *Foote*, 48 P.R.R. 479, to the effect that the Legislature cannot create an office by any provision contained in an appropriation act. In the instant case the Legislature merely appropriated a certain amount as the salary of a law clerk. It did not attempt to create any office. If the law clerk in question was not a public officer, he was an employee within the meaning of Section 19 of the Public Service Commission law. The mistake of the district judge, in referring

to the position of the law clerk as an office, is not a sufficient ground for reversal."

The question was studied anew by the court in *Ortiz Reyes* v. *Auditor of Puerto Rico,* 56 P.R.R. 836, 842, it being held that "employees whose jobs arise in the ordinary course of government may be created by the general appropriation bill."

And lastly, it was also considered in *Hopgood* v. *Porto Rican and American Ins. Co.,* 60 P.R.R. 322, 326, in which, after referring to the above-cited cases, it was concluded:

"We need not determine in this case whether (*a*) the position of Assistant Commissioner exists, but that incumbent is a mere employee, as in the *Landrón* and *Ortiz Reyes* cases, or whether (*b*) no such office exists, since it involves the exercise of executive powers and discretion by a public officer, and may therefore be created only by a special act, as we held in *People* v. *District Court, supra.* In either event, the result in this case is the same: No office of 'assistant' exists within the Department of the Interior which carries with it the power and duties prescribed by § 172 of the Political Code."

Is the deputy clerk of a municipal court an officer or an employee? Let us see.

The municipal courts of Puerto Rico have been operating ever since they were organized by the military government in 1899. The Organic Act of 1900—§33—recognized their existence, ordered that they continue as they existed, and affirmed the authority of the Legislative Assembly to legislate from time to time as it may see fit with respect to said courts, and any others they may deem it advisable to establish, their organization, the number of judges and officials and attachés for each, their jurisdiction, their procedure, and all other matters affecting them.

They were reorganized in 1904 by the Legislative Assembly, it being provided by § 11 of the amendatory law (Laws of 1904, p. 103) that "there shall be a secretary for every municipal court, who shall be elected by popular vote." In

the Compilation of 1911, pp. 247 to 250, are found various laws creating certain municipal courts with the respective judges, clerks, and marshals. The method of appointment was subsequently altered and each time a new court was established this was done by special act and not by virtue of the General Appropriation Act.

We are not dealing in this case with the establishment of a municipal court. If that were the case, there would be no doubt that a special act would be necessary to establish it. We are dealing with a municipal court already established with its judge, its clerk, and its marshal, to which two deputy clerks are attached by means of appropriations for the payment of their salaries.

We shall first examine the jurisprudence with respect to what is generally understood by the term public officer, then as to the clerks of courts, and lastly as to the deputy clerks.

"When a question arises whether a particular position in the public service is an office or an employment merely," it is said in 42 Am. Jur., Public Officers, § 12, "recourse must be had to the distinguishing criteria or elements of public office. . . Briefly stated, a position is a public office when it is created by law, with duties cast on the incumbent which involve some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; while a public employment, on the other hand, is a position in the public service which lacks sufficient of the foregoing elements or characteristics to make it an office. However, even where the appointment is in the nature of an employment, the appointee may be a public officer if the necessary elements of an office are present."

And the same author, resting on the decisions of the courts, adds in the following §13: "An officer is distinguished from an employee in the greater importance, dignity, and independence of his position, and the authority to direct and

supervise. There is upon the former the power of direction, supervision, and control. But the fact that the position is a subordinate one and that its holder may be accountable to a superior does not prevent it from being an office, or the incumbent an officer as distinguished from a mere employee. A subordinate or inferior officer is none the less an officer. A degree of responsibility for results rests upon a public officer that does not attach to a mere employee.''

With respect to the clerks of courts, it is said by that same authority: ''The clerk of a court of justice, using the term as the title of a particular officer, is a ministerial officer of the court, having the custody of its records and seals, with power to certify to the correctness of transcripts from such records, and possessing authority to perform certain acts of a judicial nature incidental to his ministerial duties.'' 10 Am. Jur., *Clerks of Courts*, § 2.

And as to the deputy clerks: '' . . . As a general rule a deputy clerk may perform all ministerial acts appertaining to the office of his principal. Thus, deputy clerks may exercise the power to authenticate instruments for record when their principals possess it. The judicial powers of a principal clerk cannot, however, be delegated to his deputy unless the statute so permits. In those jurisdictions where a deputy clerk is recognized as an independent public officer and is endowed by statute with authority to do any act which his principal may do, authority exists in the deputy himself to act alone by operation of law, and since such authority is not derived solely through the principal, it is well executed in the name of the deputy alone without mention of his principal.'' 10 Am. Jur., *Clerks of Courts*, § 19.

If we examine the historical antecedents above-mentioned relative to the office of clerk of a municipal court in the light of said jurisprudence, and the provisions of a recent act passed by our Legislature ''to regulate the functions of the deputy secretaries and deputy marshals of municipal courts,''

we must conclude that said deputy secretaries have the characteristics and must be considered more as officers than as employees.

Said Act is No. 6 of 1937 (Laws of 1936–37, p. 128). Section 1 thereof reads as follows:

The deputy secretaries and the deputy marshals of municipal courts shall have the same powers, attributes, obligations, and duties as the marshals and secretaries, respectively, of said courts; and they may authorize and sign certifications, summonses, and, in general, all such legal documents as the marshals and secretaries are authorized to execute, their acts having the same validity as those authorized by the latter; but when they are acting at the same time as the secretaries and marshals, they may sign legal documents and certifications stating over their signatures that they do it *by order* of the latter; and in cases of absence, they may sign, stating after their signatures that they do so as acting officers.''

If we rigidly applied the rule that by the Appropriation Act only employees' offices can be created, upon fixing the payment of their salaries, we would have to decide the issue before us in this case in favor of the appellant. Nevertheless, if the deputy clerk of a municipal court is an officer, it cannot be denied that when he is appointed for an already established court, his appointment implies the addition of only one employee whose duties have been previously fixed by the statute in consideration of the increase of the work in said court, and in that case it does not seem absolutely necessary to require the enactment of a separate special law to create the office.

It seems proper, nevertheless, to emphasize that the best method to follow and which in our judgment should be followed, is that of enacting separate laws for the creation of the office, no matter how unimportant this might be, because that method is the one more in harmony with the Federal act on that matter which has as its purpose that every legislator shall have an exact idea as to the measures he votes on.

In arriving at this conclusion, we have also utilized the reasoning of the Supreme Court of Pennsylvania, when deciding the case of *Commonwealth ex rel. Greene* v. *Gregg*, 161 Pa. 582, 29 A. 297, transcribed in the decision of this court in *Ortiz Reyes* v. *MacLeod, Auditor, supra,* as follows:

"The sole question presented is whether the item of the general appropriation bill of 1893, appropriating a sum 'for the payment of the salary of a clerk in the offices of the prothonotaries of the Supreme Court,' etc., is a valid authority to the auditor general and state treasurer to issue and pay warrants for that purpose. . . It is uncontroverted, therefore, that the legislature could do the substantial thing, and the only question is whether it could do so in the present form. In general, it will not be disputed that the legislature is the exclusive judge of the form in which its enactments shall be put, and its mandate in that respect cannot be questioned, unless it transgresses a plain prohibition in the constitution. The only provision invoked here is section 15 of article 3: 'The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the commonwealth,' etc. The history and purpose of that section are well known. It was aimed at the objectionable practice of putting a measure of doubtful strength, on its own merits, into the general appropriation bill—in legislative phrase, 'tacking it on as a rider,'—in order to compel members to vote for it, or bring the wheels of government to a stop. . . General appropriation bills, from their nature, usually cover a number of items, not all relating strictly to one subject. They were therefore excepted from the requirement of section 2, and this exception necessitated the special section 15 relating to them. The object of both is the same. Is the present measure within the mischief that was intended to be prohibited? The instances cited by the appellant, covering a period of 20 years since the adoption of the constitution, show the legislative understanding on the subject; and, we may fairly infer, that of the executive, also, as the various acts cited were approved by the governor. Such understanding and practice are not, of course, binding on the judiciary, who are the ultimate authority in the interpretation of the constitution; but, as the view of the two co-ordinate branches of the government, they are entitled to respectful consideration and persuasive force, if the matter be at all in doubt. It cannot be assumed that the constitution meant to compel

the legislature even to supervise all the details of the government. That is properly the function of the executive and judicial branches. What work there is to be done, and what clerical force is requisite to do it, is a question of detail, as to which much must necessarily be left to the head of each department. It is clearly the legislative province to keep a general control over the expenditure on the public funds, but this it does so long as no money is paid out without a previous appropriation for that purpose. While it thus holds the pure strings, it controls the whole subject as completely as its proper functions under the constitution demand. In passing general appropriation bills, the constitution limits them to the 'ordinary expenses of the executive, legislative, and judicial departments,' and some other enumerated matters, and every valid appropriation in this form must appear to be reasonably within the description of 'ordinary expenses'; but it would be sticking in the bark to require a separate bill to be passed every time an additional clerk was to be appointed in a public department. In regard to the particular item under consideration, it appears to be intended to pay for part of the regular and ordinary work of the offices named, and therefore to be for their ordinary expenses. It is a recognition by the legislature that the prothonotary cannot do the whole work of his office propria manu, and an authority to him to have a portion of it done at the public cost. By such recognition and authority, it becomes a part of the ordinary expenses of his office, and that his office is a part of the judicial department of the commonwealth does not admit of question. As already said, it is conceded on all hands that the legislature had ample power to do the substantial thing that it did, to wit, authorize the appointment of a clerk in the office of the prothonotary, and provide for his salary out of the public treasury; and as the purpose of such appointment, and the duties of the appointee, were to secure the performance of the regular and ordinary work of the office, we are of opinion that the legislature might constitutionally do it in the form they did, by an item in the general appropriation bill for the judicial department.''

Interpreting the law in that way, taking into consideration the surrounding circumstances which we have stated, we must decide in this particular case that the office of deputy clerk of the Municipal Court of Fajardo exists, and therefore that the complaint on which the prosecution was based was sworn to before an officer authorized to take an oath.

*People* v. *Rodríguez,* 49 P.R.R. 457. The assigned error was not committed, and consequently the appeal must be denied and the judgment appealed from affirmed.

Mr. Justice Snyder agrees with the result, as he is of the view that the deputy secretary of the Municipal Court of Fajardo is an employee and not a public officer.

Mr. Justice Todd, Jr., dissenting.

I agree with the first conclusion arrived at by the majority, to the effect that the deputy clerk of a municipal court is an officer. See *McClung* v. *Johnson,* 289 Pac. 199 (Cal. 1930); *State* v. *Smith,* 96 So. 127 (La. 1923). Nevertheless, this point being settled, I dissent as to the second conclusion arrived at, to the effect that said office can be created in the General Appropriation Act in violation of § 34 of the Organic Act. I am of the opinion that the case of *Commonwealth ex rel. Greene* v. *Gregg,* 161 Pa. 582, 29 Atl. 297, cited as authority in the case of *Ortiz Reyes* v. *McLeod,* 56 P.R.R. 836, 841, as well as in the opinion of the majority, is not applicable to the facts in the case at bar, as in the latter we are not dealing with an *"employee* whose job arises in the ordinary course of government." Cf. *State* v. *Thompson,* 289 S. W. 338 (Mo. 1926), and *Sellers* v. *Frohmiller,* 24 P. (2d) 666 (Ariz. 1933).

The judgment should be reversed.