**[J-65A-2023, J-65B-2023 and J-65C-2023] [MO: Todd, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**


| | | |
|---|---|---|
| LARRY KRASNER, IN HIS OFFICIAL CAPACITY AS THE DISTRICT ATTORNEY OF PHILADELPHIA | : : : : : : : : : : : | No. 2 EAP 2023<br><br>Appeal from the Order of Commonwealth Court entered on December 30, 2022, at No. 563 MD 2022.<br><br>ARGUED: November 28, 2023 |
| v. | | |
| SENATOR KIM WARD, IN HER OFFICIAL CAPACITY AS PRESIDENT PRO TEMPORE OF THE SENATE; REPRESENTATIVE TIMOTHY R. BONNER, IN HIS OFFICIAL CAPACITY AS AN IMPEACHMENT MANAGER; REPRESENTATIVE CRAIG WILLIAMS, IN HIS OFFICIAL CAPACITY AS AN IMPEACHMENT MANAGER; REPRESENTATIVE JARED SOLOMON, IN HIS OFFICIAL CAPACITY AS AN IMPEACHMENT MANAGER; AND JOHN DOES, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE SENATE IMPEACHMENT COMMITTEE | : : : : : : : : : : : : : : : : : : : : | |
| APPEAL OF: REPRESENTATIVE TIMOTHY R. BONNER AND REPRESENTATIVE CRAIG WILLIAMS | : : : : | |
| LARRY KRASNER, IN HIS OFFICIAL CAPACITY AS THE DISTRICT ATTORNEY OF PHILADELPHIA, | : : : : : : : : : : : : : | No. 3 EAP 2023<br><br>Appeal from the Order of Commonwealth Court entered on December 30, 2022, at No. 563 MD 2022.<br><br>ARGUED: November 28, 2023 |
| Appellant | | |
| v. | | |
| SENATOR KIM WARD, IN HER OFFICIAL CAPACITY AS PRESIDENT PRO | : : | |

TEMPORE OF THE SENATE;
REPRESENTATIVE TIMOTHY R.
BONNER, IN HIS OFFICIAL CAPACITY AS
AN IMPEACHMENT MANAGER;
REPRESENTATIVE CRAIG WILLIAMS, IN
HIS OFFICIAL CAPACITY AS AN
IMPEACHMENT MANAGER;
REPRESENTATIVE JARED SOLOMON, IN
HIS OFFICIAL CAPACITY AS AN
IMPEACHMENT MANAGER; AND JOHN
DOES, IN THEIR OFFICIAL CAPACITIES
AS MEMBERS OF THE SENATE
IMPEACHMENT COMMITTEE,

    Appellees

LARRY KRASNER, IN HIS OFFICIAL
CAPACITY AS THE DISTRICT ATTORNEY
OF PHILADELPHIA

    v.

SENATOR KIM WARD, IN HER OFFICIAL
CAPACITY AS PRESIDENT PRO
TEMPORE OF THE SENATE;
REPRESENTATIVE TIMOTHY R.
BONNER, IN HIS OFFICIAL CAPACITY AS
AN IMPEACHMENT MANAGER;
REPRESENTATIVE CRAIG WILLIAMS, IN
HIS OFFICIAL CAPACITY AS AN
IMPEACHMENT MANAGER;
REPRESENTATIVE JARED SOLOMON, IN
HIS OFFICIAL CAPACITY AS AN
IMPEACHMENT MANAGER; AND JOHN
DOES, IN THEIR OFFICIAL CAPACITIES
AS MEMBERS OF THE SENATE
IMPEACHMENT COMMITTEE

APPEAL OF: SENATOR KIM WARD

No. 4 EAP 2023

Appeal from the Order of the
Commonwealth Court entered on
December 30, 2022, at No. 563 MD
2022.

ARGUED: November 28, 2023

## CONCURRING AND DISSENTING OPINION

[J-65A-2023, J-65B-2023 and J-65C-2023] [MO: Todd, C.J.] - 2

**JUSTICE MUNDY**                                              **DECIDED: September 26, 2024**

I agree with the Majority's conclusion that the question of the effect of *sine die* adjournment is justiciable.  However, because Article VI, Section 5 of our Constitution does not contain a temporal limitation on the mandate that the Senate hold a trial on "all impeachments," and Article II, Section 4 similarly does not impose such a limitation on the Senate's role in conducting an impeachment trial, I respectfully dissent.

Article VI of the Pennsylvania Constitution is titled "Public Officials."  Article VI, Sections 4 and 5 specify the powers and roles of the House of Representatives and the Senate in impeachment proceedings as follows:

> **§ 4. Power of impeachment**
>
> The House of Representatives shall have the sole power of impeachment.

PA. CONST. art. VI, § 4.

> **§ 5. Trial of impeachments**
>
> All impeachments shall be tried by the Senate.  When sitting for that purpose the Senators shall be upon oath or affirmation.  No person shall be convicted without the concurrence of two-thirds of the members present.

PA. CONST. art. VI, § 5.

In Article VI, Sections 4 and 5, the text of our Constitution plainly and unambiguously delineates the separate, distinct, and independent roles of the House of Representatives and the Senate in the impeachment of a public officer.  The House of Representatives has "the sole power of impeachment."  PA. CONST. art. VI, § 4; *accord In re Investigation by Dauphin County Grand Jury, Sept. 1938*, 2 A.2d 802, 803 (Pa. 1938) (finding the constitution's plain language provides the House's impeachment power is plenary).  Once the House exercises this power that it alone possesses, the Constitution then obligates the Senate to hold a trial on the impeachment.  PA. CONST. art. VI, § 5.

This division of powers plainly means that the roles of the House and the Senate regarding impeachment and trial are distinct and occur independently of each other without requiring concurrence from one another.

Further, the Constitution obligates the Senate to try "all impeachments." PA. CONST. art. VI, § 5. This directive is not limited by or contingent upon which session of the House of Representatives exercises its power of impeachment. The Constitution simply does not specify that the Senate must hold a trial in the same legislative session as the one in which the House has issued articles of impeachment. To the contrary, the Senate in its constitutional role as the trier of an impeachment is not exercising a legislative function. The Constitution's structure places the impeachment procedure in Article VI, separate from the House of Representatives' and the Senate's other powers and roles, making clear that this is a distinct procedure. Further, the language of Article VI, Section 5 provides that Senators "sitting for that purpose," *i.e.*, to adjudicate an impeachment, must follow different procedures, namely taking an oath or affirmation[1] and obtaining a two-thirds vote to convict, which plainly prescribes a separate "purpose" to the Senate when it is sitting as the trier of an impeachment. *Id.* When conducting an impeachment trial, the Senate has a specific role, separate and distinct from its legislative functions.

Accordingly, pursuant the plain text of the Constitution, the House of Representatives completed the exercise of its impeachment power on November 16,

---

[1] The Senate's resolution "[p]roposing special rules of practice and procedure in the Senate when sitting on impeachment trials" reflects senators sitting for the impeachment trial would take an oath affirming they would "do impartial justice according to the Constitution and laws[.]" 2022 S.R. 386 (R.R. at 131a, 143a). This oath to do impartial justice is distinct from the oath of office contained in Article VI, Section 3. *See* Pa. Const. art. VI, § 3 (providing an oath to "support, obey and defend the Constitution of the United States and the Constitution of this Commonwealth and [to] discharge the duties of [] office with fidelity.").

2022, when it passed House Resolution 240 containing amended articles of impeachment against Larry Krasner. The Senate's independent constitutional obligation to hold a trial on Krasner's articles of impeachment then arose, and that obligation was not terminated when the 206th legislative session ended. Instead, the Constitution obligated the senate of the 207th Session to try the impeachment. Nothing in the Constitution provides otherwise.

In concluding the opposite, the Majority reads Article II, "The Legislature," in combination with Article VI, "Public Officers," to impose a temporal restriction on the Senate's duty to try all impeachments such that the House's impeachment power and the Senate's trial must be completed in the same legislative session. The text of the relevant provisions of Article II clearly outlines the legislative powers of the General Assembly as follows:

> **§ 1. Legislative power**
>
> The *legislative power* of this Commonwealth shall be vested in a *General Assembly*, which shall consist of a Senate and a House of Representatives.

PA. CONST. art. II, § 1 (emphasis added).

> **§ 4. Sessions**
>
> The *General Assembly* shall be a continuing body during the term for which its Representatives are elected. It shall meet at twelve o'clock noon on the first Tuesday of January each year. Special sessions shall be called by the Governor on petition of a majority of the members elected to each House or may be called by the Governor whenever in his opinion the public interest requires.

PA. CONST. art. II, § 4 (emphasis added).

The Majority's purported textual analysis of Article II is not textual at all, it is highly attenuated. Initially, Article II—titled "The Legislature"—plainly defines the legislative

powers of the General Assembly. As seen above, Article II, Section 1 provides "the legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." PA. CONST. art. II, § 1. Notably, this "legislative power" is textually distinct from the "sole power of impeachment" bestowed by Article VI, Section 4 on the House of Representatives and from the duty to conduct a trial of "all impeachments" conferred on the Senate by Article VI, Section 5. *See Commonwealth ex rel. Attorney General v. Griest*, 46 A. 505, 505-06 (Pa. 1900) (recognizing that an Article of the Constitution may be construed as "a system entirely complete in itself").[2] The Commonwealth's legislative power is exercised by the collective General Assembly, whereas each House has a distinct and independent power regarding impeachment. Thus, when Article II, Section 4 states that the "General Assembly shall be a continuing body during the term for which its Representatives are elected[,]" it plainly means the General Assembly as the body exercising the Commonwealth's legislative power given its placement in Article II. This makes sense because only the General Assembly acting as an integrated unit can pass legislation. The same is not true of the

---

[2] The Majority is correct that *Griest* did not address impeachment proceedings. *See* Maj. Op. at 49, fn 30. However, *Griest* stands for the principle that the Constitution provides certain processes that are separate from and unconnected to other Articles of the Constitution. *See Griest*, 46 A. at 506 (declaring the article providing for Constitutional Amendments is "a separate and independent article, standing alone and entirely unconnected with any other subject."). Article VI's impeachment power is, like the amendment process, "a system entirely complete in itself; requiring no extraneous aid, either in matters of detail or of general scope, to its effectual execution." *Id.* The impeachment power is not a legislative power, so the Majority's rejoinder to *Griest*—that "[t]here was no issue in that case as to whether the General Assembly which passed the proposed amendment was constitutionally empowered by Article II, Section 4 to do so"— is misplaced. *See* Maj. Op. at 49, fn. 30. Article II, Section 4, which addresses the duration of a legislative session, does not address the question of the duration of the Senate's duty to try all impeachments. Instead, Article VI, Section 5 addresses the Senate's role in the impeachment process, and it clearly does not contain a temporal restriction.

distinct roles of impeachment (House) and trial (Senate). Each of those roles is fulfilled by a single House acting without the other.

Despite the Majority's efforts to read Article II as a limitation on the Senate's constitutional duty to try all impeachments, such a temporal limitation does not exist in the text of the Constitution. The Majority begins its reasoning with foundational constitutional principles that are not in dispute. The Majority states that the Constitution's use of "House of Representatives" and "Senate" "must be understood to have the same meanings ascribed to them by Article II, and, consequently, as a necessary condition precedent to the House of Representatives and Senate executing powers afforded by such provisions, each body must be duly constituted and authorized to act under Article II." Maj. Op. at 47. But this does not answer the question of whether the Senate's duty to conduct a trial on all impeachments is temporally restricted. It simply means that when the Senate sits to try an impeachment, it must be duly constituted and authorized to act.

Next, the Majority states that when the House of Representatives has exercised its impeachment power, it "immediately triggers the requirement of Article VI, Section 5 that 'the Senate,' again acting collectively as a body, hold a trial on the articles of impeachment passed by the House." *Id.* Nonetheless, Article VI, Section 5 does not specify a timeframe within which the Senate's trial must be commenced or completed, nor does it state or imply that it must be the Senate of the same session in which the impeachment took place. Similarly, the Majority explains that "under Article II, Section 4, the General Assembly is a continuing body only for this two year session, and upon the expiration of that session, it ceases to exist." *Id.* at 47. As explained above, Article II,

Section 4 refers to specifically legislative powers of the General Assembly, which are distinct from the individual Houses' impeachment powers.[3]

From these foundational constitutional principles, the Majority then extrapolates a temporal limitation on the Senate's impeachment role that is not contained in the Constitution. Referring to the definition of a legislative session in Article II, the Majority opines:

> all powers granted by the Constitution to the House of Representatives and the Senate last only for the duration of the session of the General Assembly in which those bodies came into being under Article II, and those powers expire when that session expires. The Constitution simply does not textually permit the House and the Senate of a subsequent session of the General Assembly to take any further action on matters which the House or Senate of a prior session of the General Assembly may have begun, but not finished during that session, given that they are constitutionally distinct entities under Article II.

*Id.* at 48. The Majority continues, "under Article II, a House impeachment resolution authorizing impeachment and the transmission of articles of impeachment to the Senate

---

[3] Contrary to Justice Wecht's legislative/judicial characterization, my position is based solely on the text of the Constitution which plainly distinguishes between the "legislative power" and the "power of impeachment." *See* Concurring Op. at 4 (Wecht, J.). Justice Wecht's concurring opinion dismisses the Constitution's textual distinction of the General Assembly's "legislative power" from the House's "power of impeachment" and the Senate's role as trier of impeachments because Article II specifies the composition of the legislature itself. *See id.* at 5. Again, Article II, Section 4 defines the session of the General Assembly as a collective body exercising its Article II, Section 1 legislative power. This is different from the other Article II provisions that Justice Wecht invokes. *See id.* at 5-6. Those other Article II provisions apply to individual senators and representatives (term length and eligibility) and to each House individually (quorum and open sessions). *See* Pa. Const. art. II, §§ 3, 5, 6, 7, 10, 13. Thus, those requirements are distinct from Article II, Section 4 because Section 4 applies to the General Assembly as a collective body exercising its legislative power. To illustrate, the Senate could not conduct an impeachment trial with ineligible members because Article II, Sections 5-7 applies to individual members any time they sit in their official capacity. Similarly, the Senate could not try an official without a quorum because Article II, Section 10 applies any time the Senate sits as a body. In contrast, the Section 4 "continuing body" language applies only to the collective General Assembly in the exercise of its legislative power.

for trial, and a Senate resolution which accepts those articles for trial, expire with that Session of the General Assembly, such resolutions can have no legal force and effect in a new session of the General Assembly whose membership has been altered by an intervening election and is now composed of both reelected and newly elected members." *Id.* at 50. Even conceding that each House's powers expire when a legislative session expires, the Constitution nonetheless vests every session of the Senate with the obligation to try "all impeachments," independent of the whether the same or a prior session of the House of Representatives issued the articles of impeachment. In terms of this case, the House of Representatives of the 206th Session of the General Assembly completed the exercise of its constitutional power of impeachment when it issued the resolution containing the articles of impeachment, which triggered the requirement that the Senate hold a trial. Although the Senate of the 206th Session of the General Assembly's obligation to conduct a trial expired at the end of its session, Article VI, Section 5 of the Constitution imposes that same obligation on the Senate of the 207th Session of the General Assembly.

Next, the Majority states that articles of impeachment "must also be considered an expression of the will of the then-sitting House of Representatives that the then-sitting Senate conduct a trial on the allegations contained in the articles." *Id.* at 49. But there is no textual support for such a concept. Given that the Constitution requires the Senate to try "all impeachments" it is more accurate to say that the articles of impeachment express the House's intent that the Senate conduct a trial *regardless of the time in the future or the specific legislative session in which that occurs.* Here, the House of Representatives exercised its power of impeachment under Article VI, Section 4, giving rise to the Senate's constitutional duty to conduct a trial of that impeachment. The Constitution simply does not specify that the Senate sitting when the House of Representatives passed its articles

of impeachment must conduct the impeachment trial.  Instead, the Constitution directs the Senate to try *all* impeachments.  The majority converts this to *some* impeachments.

Notably, the text of Article VI does, in at least one instance, require action by the General Assembly as a whole.  *See* PA. CONST. art. VI, § 2 ("The General Assembly may by law declare what offices are incompatible.").  By referring to the legislative body as a unit in the exercise of its lawmaking function, Section 2 incorporates from Article II, Section 4 the requirement, attendant to that specific function, that the Houses and the Senate pass the bill in the same legislative session.  However, Sections 4 and 5 of Article VI are distinctly different from Section 2 in that they only refer to the two Houses *individually in their separate functions*.  This implicates the principle of construction that, where language appears in one section of a statute but is omitted from a related provision, a different meaning is presumed.  *See In re Vencil*, 152 A.3d 235, 244 (Pa. 2017).  To the extent this leaves any uncertainty concerning whether the framers intended that the House of one session could impeach and the Senate of a subsequent session could hold a trial, such uncertainty is resolved by the command, expressed in unambiguous terms and without exception, that "all impeachments" must be tried by the Senate.  The word "all" being universal necessarily incorporates impeachments by the House during a prior session.

Lastly, the Majority concludes "that the Articles of Impeachment passed by the House of Representatives of the 206th Session of the General Assembly, and transmitted to the Senate of the 206th Session of the General Assembly, became null and void upon the expiration of the 206th Session of the General Assembly on November 30, 2022." *Id.* at 51.  As explained above, this holding is not supported by the Constitutional text or history.  Instead, and consistent with the above explanation, the House of Representatives' transmission of the articles of impeachment to the Senate represents

the completion of the House's exercise of its power of impeachment, which then constitutionally obligates the Senate to try that impeachment. There is no constitutional expiration date for such obligation. Because the Constitution's plain text does not temporally restrict the Senate's duty to try *all* impeachments, the Senate of the 207th Session of the General Assembly was not constitutionally prohibited from conducting a trial on the articles of impeachment.

This interpretation of the nature of impeachment proceedings as surviving a *sine die* adjournment of the General Assembly has been consistent throughout our Commonwealth's history. As Designated Appellee Senator Kim Ward chronicles, five impeachments in our history have continued from one legislative session of the General Assembly to a subsequent session.[4] While the General Assembly's understanding of the Constitution and its practice are not binding on the judiciary, it is persuasive as "strong evidence of the true interpretation of the constitutional power of the legislature[.]" *Olive Cemetery Co. v. Phila.*, 93 Pa. 129, 132 (1880) (internal quotation marks and citation omitted); *see also Commonwealth ex rel. Greene v. Gregg*, 29 A. 297, 298 (Pa. 1894). Additionally, the Attorney General of Pennsylvania issued an opinion in 1913 concluding that a special committee empaneled by the House of Representatives to conduct an impeachment investigation had the authority to continue its work after the adjournment of the General Assembly. *See* Umbel's Case, 41 Pa.C.C. 414, 417 (1913). The Attorney General reasoned that impeachment is not a legislative function and that each house of the legislature "has a separate and distinct function to perform in such proceedings." *Id.* This evidence of the historical practices and interpretation regarding impeachment is

---

[4] Specifically, the five impeachment trials were of: Comptroller General Nicholson (1793-94); Judge Addison (1802-03); Justices Shippen, Yeates, and Smith (1804-05); Judge Porter (1825); and Judge Chapman (1825-26). Ward's Br. at 12-17. In each case, the Senate conducted its impeachment trial on articles of impeachment issued by the House of Representatives of the prior legislative session. *Id.*

persuasive given that the Constitution's impeachment powers, currently found in Article VI, Sections 4 and 5, have not been substantively altered since the Constitution of 1790.[5] Ultimately, the touchstone in interpreting the Constitution "is the actual language of the Constitution itself," which we must interpret "in its popular sense, as understood by the people when they voted on its adoption." *Robinson Twp., Wash. Cty. v. Commonwealth*, 83 A.3d 901, 943 (Pa. 2013). As the impeachment and adjudication powers currently found in Article VI, Sections 4 and 5 have remained substantively identical since 1790, despite renumbering and minor grammatical alterations, I interpret those provisions to embody the popular understanding as reflected in our Commonwealth's history that an adjournment of the General Assembly does not terminate an impeachment proceeding. *See id.*

The Majority identifies policy concerns to support its addition of a temporal limitation to the Senate's Article VI, Section 5 duty to try all impeachments. Maj. Op. at 50. Specifically, the Majority claims that all future sessions of the Senate would be obligated to try impeachments regardless of how long ago the House passed the articles of impeachment, and that the former House of Representatives' impeachment managers would be permitted to serve indefinitely in that capacity. *Id.* However, there are countervailing concerns with confining an impeachment proceeding to a two-year legislative session. One significant problem is that it invites an impeached official who does not want to stand trial in the Senate to "run out the clock" on the impeachment process by resorting to delay tactics, such as filing motions in the Senate or initiating legal actions in the judicial system, to stave off a trial until the General Assembly's *sine die* adjournment for that session. Conversely, an official impeached late in the House's two-

---

[5] *Compare* PA. CONST. art. IV, §§ I-II (1790), PA. CONST. art. IV, §§ I-II (1838), *and* PA. CONST. art. VI, §§ 1-2 (1874), *with* PA. CONST. art. VI, §§ 4-5 (1968).

year session who wanted to rehabilitate his or her reputation by an acquittal in the Senate would be denied due process by virtue of the clock running out.[6]  However, because the constitutional language is clear and controlling, these policy concerns ultimately should not factor into this Court's analysis.  *See League of Women Voters v. Commonwealth*, 178 A.3d 737, 801 (Pa. 2018).

For these reasons, I respectfully dissent.[7]

---

[6] Justice Wecht's suggested remedy that "the new House could always pass the articles of impeachment again" does little to address either of these concerns.  *See* Concurring Op. at 8 (Wecht, J.).  An official who wants to avoid a Senate trial still has every incentive to engage in delay tactics to run out the now-definite, two-year clock, even if the new House somehow initiates an impeachment on the first day of a new legislative session. Conversely, if the new House has no political will to impeach the official again, the public is denied the ability to have the impeached official tried by the Senate.

[7] As the Majority resolves this case based solely on the principle of *sine die* adjournment, I reserve my opinion regarding the remaining issues we accepted for appeal.